# United States Court of Appeals
## For the First Circuit

No. 01-1466

SCOTT BRACKETT,

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch and Lipez, Circuit Judges,
Doumar[*], Senior District Judge.

Neil A. Hourihan for appellant.
Dina Michael Chaitowitz, Assistant United States Attorney,
with whom James B. Farmer, United States Attorney, was on brief for
appellee.

---

[*]Of the Eastern District of Virginia, sitting by
designation.

October 31, 2001

**LYNCH,** <u>**Circuit Judge**</u>.  This case raises an issue important to the administration of criminal law: the accrual date for the application of the one year limitations period in 28 U.S.C. § 2255(4) (1994 & Supp. II 1996) to a federal prisoner who petitions to reduce his federal sentence because the underlying state convictions (on which the length of the federal sentence is predicated) have since been vacated.

Scott T. Brackett is a federal prisoner who pled guilty in July 1997 to conspiracy to distribute and possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 846 (1994) and 21 U.S.C. § 841(a)(1) (1994 & Supp. 2000).  His federal sentence of 108 months became final on March 12, 1998.  More than two years later, on December 18, 2000, he filed a petition under 28 U.S.C. § 2255 to set aside his sentence.  His claim was that his federal sentence, as a career offender under U.S.S.G. § 4B1.1, was predicated on his having been convicted at least twice before of state crimes; that those convictions had now been set aside by the state court; and that he should now be resentenced.  He says he is no longer a career offender and his sentencing range consequently is only 30 to 37 months. Brackett argues that because he has already served this time he should now be released.

The district court dismissed the petition as untimely under 28 U.S.C. § 2255. The district court later denied reconsideration on the grounds that Brackett had not brought the petition within one year of the date the sentence became final as required by 28 U.S.C. § 2255(1) and that none of the other limitation provisions within that statute applied. Gonzalez v. United States, 135 F. Supp. 2d 112, 123-25 (D. Mass. 2001). The district court also issued a certificate of appealability on the question of whether the accrual provision set forth in § 2255(4) was applicable here. Id. at 125-26.

I.

A chronology of the pertinent events is helpful to understand the issues presented. In 1991, Brackett was convicted in state district court of assault and battery with a dangerous weapon, on his admission to sufficient facts, and was sentenced to 60 days. In 1993, Brackett pled guilty to a state charge of assault and battery with a dangerous weapon and received a two year suspended sentence. Further, in 1995 he also pled guilty to assault with a dangerous weapon in state court and was placed on probation.

On September 5, 1996, he was arrested on federal charges of conspiracy to distribute and possession with intent to distribute methamphetamine.

On October 9, 1997, Brackett moved in state court to vacate the 1991 and 1993 convictions. He argued that the 1991 and 1993 plea

colloquies were insufficient and that he was intoxicated at the time of the plea proceedings. In October of 1997, a state district judge denied his motion as to the 1991 conviction. In the 1997 memorandum and ruling from the state district court, the judge found that after seven years there was no preserved record of the defendant's plea conducted before the court. The 1991 case file indicated that Brackett was represented by counsel, and had executed the standard written jury waiver. The reviewing judge noted that the familiar events of federal defendants returning to the state court to vacate state convictions

> often repeated themselves in our state courts system as defendants and defense attorneys seek all avenues of relief from federal sentencing guidelines. The resources of state courts, including those of Massachusetts, are called upon time and again to turn the state criminal justice system upside down to find any possible reason to vacate state convictions to afford federal defendants relief from what apparently is becoming a more and more unworkable, mandatory federal sentencing system.
> Having reviewed the casefile in this matter at length, and the materials submitted by the defendant in support of his motion, I find no justifiable grounds to allow the defendant's motion. Further, it is to be noted that justice is not best served by the adoption of novel or convoluted arguments designed to ultimately afford defendants relief in state court from a mandatory federal sentencing system. That relief is best found within the federal system itself, be it within the federal courts or within the Congress.

Brackett's other effort, to withdraw the admission to sufficient facts in his 1993 case, was rejected by the state court on February 10, 1998. The reasons Brackett gave for undoing his 1993 plea were that the plea colloquy was incomplete and that Brackett was under

-4-

the influence of alcohol at the time and was unaware of the possible repercussions that could occur at a later date. The court noted that the tape recording of the plea colloquy no longer existed inasmuch as the defendant had delayed nearly five years in presenting the motion. Although Brackett had the right to appeal from the 1997 and 1998 denials of his motions to vacate the 1991 and 1993 convictions under Rule 30(c)(8) of the Massachusetts Rules of Criminal Procedure, he did not do so.

On February 19, 1998, Brackett was sentenced on the federal methamphetamine charges. As a result of having two prior state convictions, he was in a criminal history category of VI, had an adjusted offense level of 29, and was sentenced as a career offender under U.S.S.G. § 4B1.1. At the time he was sentenced, the prior state convictions stood. The state courts had rebuffed his efforts to vacate those 1991 and 1993 convictions. If the state convictions had then been vacated, his sentence would have been in the 30-37 month range, as opposed to the 108 months he received. Gonzalez, 135 F. Supp. 2d at 117. On March 12, 1998, his federal sentence became final because there had been no appeal. Consequently the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), limit in § 2255(1) of one year from the date of the final judgment of conviction expired before Brackett filed his § 2255 petition on December 18, 2000.

Only after his federal sentence was imposed did Brackett start yet another attempt to vacate his state convictions. On January 3, 2000, he filed a new set of motions to vacate the 1991 and 1993 convictions. In identical motions, Brackett asserted that he was denied effective assistance of counsel in 1991 and 1993 because counsel did not object to his pleading guilty even though counsel knew that he was intoxicated, and for other reasons.

His year 2000 state motions for new trials on his 1993 plea and his 1991 plea were allowed by the state court when the state prosecutor's office agreed to the motions. There was no judicial finding that the pleas should be vacated due to constitutional violations. In fact, the charges against Brackett were pending in the state court system at the time this case was briefed to us.

II.

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court, claiming the right to be released on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, may petition the court that imposed the sentence to vacate, set aside or correct the sentence. The statute provides for a one year period of limitations, which runs from the latest of:

> (1)     the date on which the judgment of conviction becomes final;
> (2)     the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is

removed, if the movant was prevented from making a motion by such governmental action;

(3)     the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)     the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.  The question on the certificate of appealability concerns only the effect of subsection (4), and it is the only issue which we now consider.

Brackett argues that "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence" must mean the date on which the state court vacated the prior criminal conviction.  The government contends that the statutory language refers to situations where the underlying facts supporting the vacating of the state conviction were not known to the defendant and could not have been discovered through the exercise of due diligence; then the one year runs from the discovery of such facts (or when they could have been discovered).[1]  The government says that

---

[1]     The government's brief also argues at great length that the claim presented here is not cognizable under 28 U.S.C. § 2255.  We do not decide this issue.  First, this issue was not raised below.  Indeed, the district court dismissed Brackett's petition without providing the government an opportunity to respond.  The issue is outside of the scope of the certificate of appealability, and cannot be reviewed by this Court.  Bui v. DiPaolo, 170 F.3d 232, 236-37 (1st Cir. 1999) (holding that in

-7-

because Brackett knew of the facts he used to support his state court motions well before the date of his federal sentencing, subsection (4) does not apply and this case is governed by subsection (1). The government argues that Brackett's claim is time barred because more than one year has expired since "the date on which the judgment of conviction [became] final." 28 U.S.C. § 2255(1). We review de novo the issue of statutory interpretation. Trenkler v. United States, No. 00-1657, 2001 WL 1215366, at *2 (1st Cir. Oct. 16, 2001).

The problem before us is best understood in context. Through several different mechanisms the federal sentencing guidelines increase the duration of imprisonment for a federal offender who has prior state or federal convictions. One of those mechanisms is the career offender enhancement found in U.S.S.G. § 4B1.1. Because the length of the federal sentences increases with prior state convictions, the

_____

a habeas case only issues certified for appeal in the certificate of appealability can be reviewed by the appellate court). Second, in United States v. Tucker, 404 U.S. 443 (1972), the Supreme Court allowed the use of § 2255 to attack a sentence and remanded for reconsideration of the sentence when the federal sentence took into account state convictions which violated the 6th Amendment right to counsel under Gideon v. Wainwright, 372 U.S. 335 (1963). The government made a similar argument in United States v. Pettiford, 101 F.3d 199, 201 (1st Cir. 1996), where it tried to "limit the availability of § 2255." We rejected this argument at that time and held that "whether on constitutional or grounds otherwise subject to collateral attack, we concur with the district court's recognition of federal habeas jurisdiction." Id.

sentencing guidelines have led to a cottage industry of diligent defense counsel seeking to vacate old state convictions in order to reduce the federal sentence. See United States v. Payne, 894 F. Supp. 534, 537 n.7 (D. Mass. 1995) (noting the "surprising infirmity" of Massachusetts state court convictions "as they are increasingly coming under intense scrutiny in the last ditch attempt to avoid" enhanced federal sentences). In this sense, as the Massachusetts state court judge noted in his 1997 denial of Brackett's motion to vacate, the federal sentencing guidelines have imposed an unwanted burden on the state courts, which are now faced with a flood of petitions from federal defendants and prisoners attempting to vacate state court convictions. These efforts often come many years after the date of those state convictions. This is particularly problematic because, as the Supreme Court noted in Lackawanna County District Attorney v. Coss, 532 U.S. 394, 121 S. Ct. 1567, 1574 (2001), "as time passes, and certainly once a state sentence has been served to completion, the likelihood that trial records will be retained by the local courts and will be accessible for review diminishes substantially." Attempts to vacate or set aside state court convictions have posed a particular problem in Massachusetts, because in the state district courts, where a great many criminal offenses are tried, the records of the proceedings may be destroyed after two and one half years. Special Rule of the District Courts 211(A)(4) (1997).

The problem of whether to adjust federal sentences when a federal defendant asserts that the state convictions were constitutionally invalid presents a number of issues. One was the issue of <u>where</u> a claim that the state conviction was invalid should first be heard. In <u>Custis</u> v. <u>United States</u>, 511 U.S. 485, 493-97 (1994), the Supreme Court held that the federal prisoner could not attack the validity of his prior conviction which raised his penalty from a maximum of 10 years to a mandatory minimum of 15 years in prison pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), during the federal sentencing proceedings, unless the attack was based on a deprivation of the right to counsel under <u>Gideon</u> v. <u>Wainwright</u>, 372 U.S. 335 (1963). <u>Custis</u> was animated by two policy interests: ease of administration and finality of judgments. <u>Custis</u>, 511 U.S. at 496-97. <u>Custis</u> noted that it is easier to administer cases in which <u>Gideon</u> claims are made than cases that claim ineffective assistance of counsel or failure to assure a voluntary guilty plea. <u>Id.</u> at 496. In addition, finality is especially important where a defendant challenges a previous conviction because "the defendant is asking a district court 'to deprive [the] [state-court judgment] of [its] normal force and effect in a proceeding that ha[s] an independent purpose other than to overturn the prior judgmen[t].'" <u>Id.</u> at 497 (quoting <u>Parke</u> v. <u>Raley</u>, 506 U.S. 20, 30 (1992) (alterations in original)). Naturally, the <u>Custis</u> ruling applies whether the sentence enhancement was imposed

-10-

because of ACCA or because of the Sentencing Guidelines. <u>United States</u> v. <u>Arango-Montoya</u>, 61 F.3d 1331, 1336 (7th Cir. 1995); <u>United States</u> v. <u>Garcia</u>, 42 F.3d 573, 581 (10th Cir. 1994).

After <u>Custis</u>, the "where" question became whether the constitutional infirmity of the state conviction could be raised initially in federal court by a § 2255 petition. In <u>Daniels</u> v. <u>United States</u>, 532 U.S. 374, 121 S. Ct. 1578 (2001), the Supreme Court answered this question negatively, with the exception of convictions in violation of the <u>Gideon</u> right to counsel. The Court said that a defendant may raise the issue of the validity of a state conviction in state court on direct appeal or in state post-conviction proceedings, or, if those routes had been exhausted, by petition for habeas under 28 U.S.C. § 2254. <u>Daniels</u>, 121 S. Ct. at 1582-83. But the Court would not permit leapfrogging of those state procedures to attack the state conviction initially by a federal § 2255 petition. The Court did leave open the possibility that a prisoner, who is prevented by no fault of his own from bringing a state proceeding to vacate, and was now barred by state law from doing so, could bring a § 2255 petition. <u>Id.</u> at 1584.

This means that, absent a <u>Gideon</u> challenge, the "where" question is answered: the initial attack on the validity of the state conviction should be brought in state court. Only after the state court proceedings are exhausted, as a general rule, can a prisoner come

-11-

to federal court to pursue a habeas claim. This rule is generally true both under § 2255, the federal post-conviction review for those in federal custody, and, more usually, under 28 U.S.C. § 2254, the habeas statute for those in state custody. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

In this case, Brackett has exhausted his state court remedies because he has managed to vacate two state convictions. He has accomplished the first step necessary to have his sentence reviewed by a habeas court. However, he must still contend with the time limitation contained in § 2255 -- that is, the question of when such a claim is no longer timely. Initially, we look at this question by analogy to the parallel habeas statute.

AEDPA affected both federal post-conviction relief and habeas. The Supreme Court commonly interprets § 2255 and § 2254 in light of each other. See Lackawanna County, 121 S. Ct. at 1573 (2001) (extending Daniels rule under § 2255 to a § 2254 case). Just as § 2255, the statute that concerns us, has time limits, so too does § 2244, which applies to § 2254 petitions.

Section 2244(d)(1) provides that "[a] 1-year period of limitation shall apply for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." It goes on to state that the period of limitation starts to run from the latest of four potential occurrences which are substantially similar to the ones

-12-

outlined in § 2255. 28 U.S.C. § 2244(d)(1). Indeed, § 2244(d)(1)(D) is strikingly similar to the provision that concerns us, § 2255(4). The limitation under § 2244(d)(1)(D) states that the limitation period shall run from the latest of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1).[2] The only difference between the two provisions is that § 2255(4) uses the phrase "facts supporting the claim" while § 2244(d)(1)(D) uses the phrase "the factual predicate of the claim."

The jurisprudence on the limits imposed on § 2254 by § 2244 is more developed and sheds some light on our problem. The Supreme Court addressed the issue of statutory tolling of § 2244(d)'s one year limitation period in Artuz v. Bennett, 531 U.S. 4 (2000), and held that, under § 2244(d)(2), an application to a state court for post-conviction relief tolls the limitations period in § 2244(d)(1), even if the application contains procedurally barred claims. Recently, in Duncan v. Walker, 121 S. Ct. 2120 (2001), the Court once more addressed the issue of tolling of the one year limitation period in § 2244(d). Duncan held that, while the time during which a properly filed application for state post-conviction or other collateral review is

---

[2]      In addition, § 2244(d)(2) includes a tolling provision: "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

pending is not counted toward the limitation period for filing a § 2254 petition from AEDPA's effective date, the tolling provision does not apply to the time taken by a prior application for federal habeas corpus. Duncan, 121 S. Ct. at 2129. The Court noted that the one year limitation period in § 2244(d)(1) expressed Congress's interest in finality of state court judgments because it "reduces the potential for delay on the road to finality." Id. at 2128. The Court also observed that while the tolling provision in § 2244(d)(2) potentially lengthens the road to finality, it "limits the harm to the interest in finality by according tolling effect only to 'properly filed application[s] for State post-conviction or other collateral review.'" Id. (alteration in original).

Justices Souter and Stevens concurred in the result in Duncan and noted that they thought there was nothing to bar a district court from retaining jurisdiction of a § 2254 petition from a state prisoner while state remedies were exhausted. Id. at 2129 (Souter, J., concurring); id. at 2129-30 (Stevens, J., concurring). This is their view, although in a pre-AEDPA decision, Rose v. Lundy, 455 U.S. 509 (1982), the Supreme Court directed district courts to dismiss, not stay, petitions under § 2254 while the state remedies were being exhausted.

Justices Souter and Stevens also discussed the possibility of equitable tolling in their concurrences. Justice Stevens stated

that because "federal habeas corpus has evolved as the product of both judicial doctrine and statutory law," AEDPA does not "preclude[] a federal court from deeming the limitations period tolled . . . as a matter of equity." Id. at 2130. The possibility of equitably tolling the statute of limitations contained in § 2244(d)(1) has been discussed in many cases. Indeed, this court in Neverson v. Bissonnette, 261 F.3d 120, 127 (1st Cir. 2001), remanded a § 2254 petition for consideration of the possibility of equitable tolling, without expressing a view as to whether the doctrine was available. In Delaney v. Matesanz, 264 F.3d 7, 14-15 (1st Cir. 2001), we considered that even if equitable tolling were available on that § 2254 petition, the defendant there did not qualify. See also Fahy v. Horn, 240 F.3d 239, 244 (3d Cir.) (equitable tolling of § 2244(d)'s limitation is only available in extraordinary circumstances), cert. denied, No. 01-17, 2001 WL 82597 (U.S. Oct. 1, 2001); Felder v. Johnson, 204 F.3d 168, 171-73 (5th Cir.) (ignorance of the law does not warrant equitable tolling), cert. denied, 531 U.S. 1035 (2000); Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir.) (per curiam) (equitable tolling applies to the one year statute of limitations in § 2244(d) "only in . . . rare and exceptional circumstance[s]" (internal quotation marks omitted)), cert. denied, 531 U.S. 840 (2000).

It is clear that the jurisprudence under § 2254, through § 2244, suggests a strong concern for finality, possibly leavened in

-15-

instances of clear injustice by narrow safety valves of either equitable tolling or a stay of a premature federal petition. Similar concerns must animate the limitations period under § 2255.

To return to § 2255, the net result of Custis and Daniels was to leave federal prisoners in a practical bind. They could not bring a § 2255 petition to federal court until they had gotten the state convictions vacated and they had only one year in which to accomplish that from the date of federal conviction -- a daunting task. That was so unless there was an alternate reading of the timelines.

The "when" question then becomes whether the language of § 2255(4) means that such a claim for federal resentencing does not accrue, Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000); McGinnis, 208 F.3d at 15, until the state convictions are vacated, regardless of when the prisoner knew or should have known of the facts supporting the vacating of the state conviction.

We hold that the operative date under § 2255(4) is not the date the state conviction was vacated, but rather the date on which the defendant learned, or with due diligence should have learned, the facts supporting his claim to vacate the state conviction. Section 2255(4) provides that the period begins to run from the date "on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 18 U.S.C. § 2255(4). Brackett's reading of that clause -- that the key date is the

date on which the state court vacates his conviction -- is supported by some district court decisions.[3] The district court here rejected that reading, finding that such an outcome is "contrary to the intent of Congress to impose stringent limitations to habeas relief and provide finality to federal sentences." Gonzalez, 135 F. Supp. 2d at 125. We too reject Brackett's reading for three reasons: it is not the most natural reading of the statute, it is inconsistent with the readings given to parallel uses of similar language by Congress, and such a reading would contravene legislative intent.

The most natural reading of subsection (4), both alone and in the context of the entire § 2255, is inconsistent with Brackett's argument. It would make little sense for Congress to have used the phrase "facts supporting the claim [that] could have been discovered through the exercise of due diligence" if "facts" included a state court set aside of a prior conviction. Such court actions are obtained at the behest of the petitioners and not "discovered" by them. It

---

[3] In United States v. Cavallaro, No. CRIM. 95-52-P-H, 2000 WL 230225 (D. Me. Feb. 9, 2000), the court interpreted the term "facts" in subsection (4) as the fact of the state court decision vacating the prior convictions and held that such facts were not "discoverable" until the date of that decision. Similarly, in United States v. Hoskie, 144 F. Supp. 2d 108, 111 (D. Conn. 2001), the court held that the one year statute of limitations under 2255(4) "starts to run on the date the state convictions are vacated, not an earlier date when the defendant discovered the facts forming the basis for the attack on the state convictions."

-17-

would be an odd usage to say that court actions "could have been discovered."  The language rather suggests that this provision is concerned with facts that were not known and could not have been discovered through the exercise of due diligence as of the date of the federal sentence.  Although it is true that Brackett did not know how the state court would act on his motion and did not know when it would act on his motion, we do not think that these are the type of facts to which Congress referred.  The construction Brackett gives, although arguable, is not the most plausible reading on a purely linguistic basis.

Further, the construction of the remaining clauses of § 2255 undercuts Brackett's argument.  In the law, "facts" are usually distinguished from court decisions.  That distinction is itself contained within § 2255.  Indeed, § 2255(3) refers to the date a right asserted was initially recognized by the Supreme Court, and § 2255(1) refers to the date a judgment becomes final.  The use of the term "facts" in subsection (4) is in contrast to both the language about the recognition of rights asserted recognized by a court in subsection (3) and a court's judgments in subsection (1).

We think that the reference in subsection (4) was to basic, primary, or historical facts, as that is the sense in which Congress has used similar language elsewhere.  There are a great many other

instances where courts[4] and statutes refer to dates on which facts supporting claims presented could have been discovered through the exercise of due diligence.

Perhaps the most important examples are in the parallel habeas provisions. We start with 28 U.S.C. § 2244(d)(1), with its parallel language to § 2255. Under § 2244(d)(1)(D), the one year limitation period runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." This provision's reference to "factual predicates" has been interpreted to mean evidentiary facts or events and not court rulings or legal consequences of the facts. Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000) (stating that "the trigger in 2244(d)(1)(D) is (actual or imputed) discovery of the claim's

---

[4]     For example, in tort law under the discovery rule, the running of the statute of limitations does not begin until the fact of the injury becomes known, or should have become known in the exercise of due diligence. See, e.g., Collins v. Nuzzo, 244 F.3d 246, 253 (1st Cir. 2001) (stating that in Massachusetts defamation cases "the statute only starts to run when the harm becomes known, or in the exercise of reasonable diligence should have become known, to the injured party" (internal quotation marks omitted)); Saenger Org., Inc. v. Nationwide Ins. Licensing Assocs., Inc., 119 F.3d 55, 65 (1st Cir. 1997) ("Under the Massachusetts discovery rule, the running of the statute of limitations is delayed while 'the facts,' as distinguished from the 'legal theory for the cause of action,' remain 'inherently unknowable' to the injured party." (quoting Catrone v. Thoroughbred Racing Ass'ns of N. Am., Inc., 929 F.2d 881, 885 (1st Cir. 1991)) (emphasis and internal quotation marks omitted)).

-19-

'factual predicate', not recognition of the facts' legal significance"); <u>Ybanez</u> v. <u>Johnson</u>, 204 F.3d 645, 646 (5th Cir.) (per curiam) (rejecting the argument that a state court decision can be the factual predicate under § 2244(d)(1)(D)), <u>cert. denied</u>, 531 U.S. 881 (2000). Similarly, 28 U.S.C. § 2254(d)(2) refers to state court decisions which refer to an "unreasonable determination of the facts." We recently held that for this purpose "facts" are defined as "basic, primary, or historical facts." <u>Sanna</u> v. <u>DiPaolo</u>, No. 01-1008, 2001 WL 1013148, at *3 (1st Cir. 2001). Because § 2254 (habeas corpus from state convictions) and § 2255 (post-conviction relief from federal convictions) are analogous to one another, the way the state habeas provisions are interpreted should be used to interpret § 2255(4).

Using this model, Brackett was aware of the "facts" supporting his claim that his state court conviction was invalid -- that he was intoxicated during the plea colloquy and that the colloquy was incomplete -- long before the date of his federal sentencing.

Our final reason is that Brackett's reading of § 2255 would create a loophole which is contrary to the legislative intent of insuring a greater degree of finality. <u>Duncan</u> and other cases

-20-

establish that one of the signal purposes animating AEDPA is the desire of Congress to achieve finality in criminal cases, both federal and state.  Duncan, 121 S. Ct. at 2127-28; Williams v. Taylor, 529 U.S. 420, 436 (2000); Calderon v. Thompson, 523 U.S. 538, 554-58 (1998); see also Trenkler, 2001 WL 1215366 at *4 (noting importance of not creating an "end-run" around AEDPA's statute of limitations because of concern for delay); United States v. Barrett, 178 F.3d 34, 38 (1st Cir. 1999) ("gatekeeping mechanisms . . . augment society's interests in finality of criminal convictions").  To read the statute as Brackett does would be to create strong counter-incentives working against finality in both the state and federal criminal justice systems.  On Brackett's reading, federal prisoners would be given incentives to delay or repeat their challenges to their state court convictions, and particularly to wait until the state had destroyed the trial or plea records, thus making it easier in some instances to obtain an order vacating the conviction.  Assuming the state court vacates the conviction, the delay would also diminish the chances of retrial, as witnesses' memories fade or witnesses become unavailable.  New trials might never be held, for reasons unrelated to the merits of the case.  Rather than affording respect and finality to state proceedings, such a reading of the

statute would lead to new burdens on the states through increased filings of motions to vacate, and would upset finality.[5]

We acknowledge that there may be situations in which our reading of this one year period of limitation in § 2255(4) would arguably work an injustice. As the Supreme Court noted in Lackawanna County, 121 S. Ct. at 1575, there may be cases of federal prisoners who, at the time of federal sentencing, were actually innocent of the state crime for which they had been convicted. It may be that such prisoners do not become aware of facts and could not reasonably in the exercise of due diligence have become aware of facts to prove their innocence until later. And it may be that once they discover such facts they move promptly in state court to vacate the conviction but they are unable to obtain a state decision vacating the conviction

---

[5] In the pre-AEDPA era, this Court in Pettiford held that a prisoner may use § 2255 to challenge a federal sentence that had been enhanced by Massachusetts state convictions that were vacated after federal sentencing. This conclusion was reached although the vacating of the state court decisions there appear to have been based on the absence of records that had been destroyed, and on what was thought to be the Commonwealth's burden to prove that the procedures were regular. Pettiford, 101 F.3d at 202. Pettiford did not, of course, construe the limitation period language in AEDPA, but it did anticipate that AEDPA's limitations period would resolve the problem posed. 101 F.3d at 202 n.2. The Court noted that the one year limitation period would eliminate the possibility of prisoners "sandbagging" the government by having their state convictions vacated long after federal sentencing has taken place.

until more than one year after they learn of the facts, and so cannot bring a petition within the time limit in § 2255(4).[6]

In situations of potential injustice, there may be mechanisms, both before and after the federal sentencing, which act as safety valves. For example, when there are pending state proceedings to vacate state convictions instituted before the federal sentence is imposed, it would be within the power of the federal sentencing judge to continue the sentencing hearing for a reasonable period to permit the conclusion of the state court proceedings. See Fed. R. Crim. P. 32(a) ("The time limits prescribed [for sentencing] may be either shortened or lengthened for good cause."); see also United States v. Ottens, 74 F.3d 357, 359 (1st Cir. 1996) (the district court judge has wide discretion in granting a sentencing continuance).

Alternatively, petitioners could argue for a rule of equitable tolling under § 2255. The First Circuit has yet to adopt such a rule, Trenkler, 2001 WL 1215366 at *6, but equitable tolling under § 2255 has been adopted by several circuits in cases where claimants file late petitions because of extraordinary circumstances. See Dunlap v. United States, 250 F.3d 1001, 1008-09 (6th Cir. 2001)

---

In another context we have acknowledged the possible unfairness that could result if the gatekeeping requirements of § 2255 barred relief when a new legal argument does not become available until after a first petition has been filed and denied. Sustache-Rivera v. United States, 221 F.3d 8, 12-18 (1st Cir. 2000), cert. denied, 121 S. Ct. 1364 (2001).

(adopting standard to apply in § 2255 equitable tolling cases); <u>United States</u> v. <u>Marcello</u>, 212 F.3d 1005, 1010 (7th Cir.) (holding that "§ 2255's period of limitation is not jurisdictional but is instead a procedural statute of limitations subject to equitable tolling."), <u>cert. denied</u>, 531 U.S. 878 (2000); <u>Sandvik</u> v. <u>United States</u>, 177 F.3d 1269, 1271 (11th Cir. 1999) ("[T]here is every indication that § 2255's deadline is a garden-variety statute of limitations, and not a jurisdictional bar that would escape equitable tolling.").

However, we do not reach the issue of whether this Circuit should adopt the doctrine of equitable tolling because the defendant here did not present an argument of equitable tolling and so it is waived. Even were equitable tolling not waived, this defendant is no candidate for equitable tolling. If he was intoxicated at the time of the 1991 and 1993 convictions or received an inadequate colloquy, he knew it then. Moreover, in contrast to a more sympathetic candidate for equitable tolling who acts with "reasonable diligence throughout the period he seeks to toll," Brackett sat on his hands for a great many years. <u>McGinnis</u>, 208 F.3d at 17-18 (outlining the Second Circuit's requirements for equitable tolling of the limitations period in § 2255); <u>see also</u> <u>Delaney</u>, 264 F.3d at 14 (the diligence of the party pursuing judicial remedies may be a factor in deciding whether equitable tolling applies). Further, the only state decisions

reviewing the merits of his attempts to vacate his convictions resulted in denials of his claim.

That Brackett even has an argument here is a situation that was brought about by the defendant and the prosecutor agreeing to vacate the prior state conviction, years after the records of his conviction were destroyed.  We do not know why the prosecution agreed -- perhaps it was inertia.  But nothing about his case suggests that the equities are in Brackett's favor.  Cf. Jamison v. United States, 244 F.3d 44, 48 (1st Cir. 2001) (under circumstances where defendant never disputed that he committed the crime and his case was only dismissed because he fled the jurisdiction "counting the [state] conviction is not even remotely an injustice").

Affirmed.