[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 5, 2003
THOMAS K. KAHN
CLERK

No. 01-14830

D. C. Docket No. 01-00014-CV-WDO-7

ROBERT JOHNSON, JR.,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

Appeal from the United States District Court
for the Middle District of Georgia

**(August 5, 2003)**

Before BLACK, RONEY and STAPLETON[*], Circuit Judges.

BLACK, Circuit Judge:

---

[*]Honorable Walter K. Stapleton, United States Circuit Judge for the Third Circuit, sitting by designation.

This case allows us to clarify the time limits in cases where career offenders indirectly attack their federal sentences by first collaterally attacking their prior state convictions. Federal prisoner Robert Johnson brought such an indirect attack on his federal sentence, and he now appeals the district court's denial of his § 2255 petition as untimely. We issued a certificate of appealability on the following question:

> Whether the district court correctly determined that appellant's motion to vacate, filed pursuant to 28 U.S.C. § 2255, was untimely under the one-year statute of limitations provision in the Antiterrorism and Effective Death Penalty Act of 1996.

We now conclude Appellant's indirect attack on his federal sentence was untimely, and we therefore affirm.

## I. BACKGROUND

Between 1983 and 1994, Appellant pled guilty to several state criminal charges. In 1994, he was indicted as one of five co-defendants on federal drug conspiracy charges, and he pled guilty. A pre-sentence investigation report recommended classifying him as a career offender based on his prior state convictions. Initially, Appellant objected to being classed as a career offender without explaining the basis for his objection. At his sentencing hearing, however, counsel for Appellant advised the district court that Appellant wished to waive all of

2

his objections to the pre-sentence investigation report. Appellant was sentenced as a career offender and received 188 months' imprisonment.

Appellant then filed a direct appeal, contending his prior state convictions were obtained in violation of his constitutional right to counsel, and he therefore should not have been sentenced as a career offender. On December 22, 1995, we affirmed Appellant's sentence. Our unpublished order included the following caveat in a footnote: "We note in passing that, should appellant obtain at some future date the vacation of the state court conviction[s] in question because they were obtained in violation of his constitutional rights, he could petition the district court under 28 U.S.C. § 2255 for the relief he now asks us to provide." *United States v. Johnson*, No. 94–9402 (11th Cir. Dec. 22, 1995). Appellant sought certiorari from the Supreme Court of the United States, but the Supreme Court denied his petition on April 22, 1996. *Johnson v. United States*, 517 U.S. 1162, 116 S. Ct. 1559 (April 22, 1996) (mem.).

Just over one year later, on April 25, 1997, Appellant filed a motion in the district court to extend the time to file a § 2255 petition. The district court ruled that Appellant's motion was untimely under § 2255 ¶ 6(1). The district court did acknowledge the possibility that exists in every habeas case, namely, that something might transpire that would permit Appellant to take advantage of one of the later

3

accrual dates under § 2255 ¶ 6. It therefore denied Appellant's motion without prejudice.

On February 6, 1998, Appellant filed a state habeas petition challenging all of his prior state convictions on the ground that he had not validly waived his right to counsel in those proceedings. On October 24, 2000, the state court vacated Appellant's prior convictions. Appellant then filed the present § 2255 petition on February 13, 2001, asking the district court to vacate his sentence because he no longer qualified as a career offender. On August 1, 2001, the district court denied the § 2255 petition as untimely. We granted a certificate of appealability, and this appeal followed.[1]

## II. DISCUSSION

As this case involves an indirect challenge to a federal sentence via a collateral attack on prior state convictions, some background on the law of such challenges is helpful.

First, in *Custis v. United States*, 511 U.S. 485, 114 S. Ct. 1732 (1994), the Supreme Court held that, during his sentencing proceeding, a federal prisoner could not attack the validity of his prior convictions that raised his maximum sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e); the only exception to this

---

[1]We subsequently appointed counsel to represent Appellant for this appeal.

rule is for prior convictions based on a deprivation of the right to counsel under *Gideon v. Wainwright. See Custis*, 511 U.S. at 496; 114 S. Ct. at 1738.

Second, federal prisoners generally cannot attack prior convictions which enhanced their federal sentences in a § 2255 proceeding challenging the validity of their federal sentence. *Daniels v. United States*, 532 U.S. 374, 376, 121 S. Ct. 1578, 1580 (2001); *see also Lackawanna County District Attorney v. Cross*, 532 U.S. 394, 403–04, 121 S. Ct. 1567, 1574 (2001) (reaching same conclusion for § 2254). If a prior conviction used to enhance a federal sentence is no longer itself open to direct or collateral attack, the defendant is generally without recourse. *Daniels*, 532 U.S. at 382, 121 S. Ct. at 1583.

Following *Custis,* many Circuits including our own have authorized indirect attacks on federal sentences; a defendant may seek to reopen his federal sentencing pursuant to § 2255 if he has successfully attacked a prior state conviction used to enhance his federal sentence. *United States v. Walker*, 198 F.3d 811, 813 (11th Cir. 1999) (per curiam) (citing cases). The effect of these rules has been to redirect challenges to federal sentences from federal courts to state courts, where court records may have been destroyed and where state executive officials often have no interest in defending a conviction for which the defendant has already served his sentence.

With this background in mind, we turn to Appellant's arguments on appeal.

A. <u>Statute of Limitations</u>

Appellant first argues his § 2255 petition, filed February 13, 2001, was timely under 28 U.S.C. § 2255 ¶ 6(4). That section provides as follows:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> . . . .
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255 ¶ 6. Appellant's argument is straightforward: the single "fact" supporting the claim in his § 2255 petition is the vacatur of his prior state convictions; absent those state convictions, Appellant should not have been sentenced as a career offender, and his federal sentence should be vacated. Appellant contends the "fact" supporting his § 2255 claim—the vacatur of his prior state convictions—could not have been discovered until October 24, 2000, the date on which the state court entered its order. He therefore reasons his § 2255 petition, filed on February 13, 2001, was within one year of October 24, 2000, and thus within the AEDPA statute of limitations.

The question we must answer is whether the vacatur of a state conviction constitutes a "fact" within the meaning of § 2255 ¶ 6(4). Ordinarily, a federal prisoner must file his § 2255 petition within one year of the date on which his judgment of conviction becomes final.[2] Because an indirect collateral attack is predicated on a successful challenge to prior state convictions used to enhance the federal sentence, it is at least plausible to argue that a petitioner has one year from the date his prior state convictions were set aside, under § 2255 ¶ 6(4).

Common sense, however, dictates that we distinguish legal propositions and results from the "facts" referred to in § 2255. A factual proposition is typically something capable in principle of falsification (or possibly even verification) by some empirical inquiry, while a legal proposition is identified by consulting some authoritative legal source. If we are asked whether Appellant's prior state convictions have been vacated, we would consult an authoritative legal source: the records of decisions of the state court where Appellant collaterally attacked those convictions. On the other hand, if we are asked whether Appellant waived his right to counsel before pleading guilty to the state charges, we would need to make an empirical

_____

[2]AEDPA's statute of limitations applies somewhat differently to a petitioner, like Appellant, whose conviction became final prior to the effective date of AEDPA. Like all other circuits to have considered the issue, we allow such petitioners a one-year grace period until April 23, 1997, to file a § 2255 petition. *See Goodman v. United States*, 151 F.3d 1335, 1337 (11th Cir. 1998).

inquiry into the matter, for example by reading the extant records of Appellant's plea hearings.[3] Put another way, the vacatur of prior state convictions is a court action obtained at the behest of a federal prisoner, not "discovered" by him. *Brackett v. United States*, 270 F.3d 60, 68 (1st Cir. 2001). Applying the common sense distinction between the factual and the legal to § 2255 ¶ 6(4), we conclude the vacatur of Appellant's prior state convictions is not a "fact" from which the one-year statute of limitations may run.

This common sense reading of the phrase "facts supporting the claim or claims" is bolstered by comparing that accrual date with the other accrual dates in § 2255. Section 2255 ¶ 6(1) refers to the date a judgment becomes final, and § 2255 ¶ 6(3) refers to the date a right was initially recognized by the Supreme Court. The use of the term "facts" in § 2255 ¶ 6(4) is in contrast to those other subsection's use of "judgments" and "rights," two legal results distinct from historical facts. *See Brackett*, 270 F.3d at 68–69. It follows that the state court's vacatur of Appellant's prior convictions is not a "fact" within the meaning of § 2255 ¶ 6(4).

---

[3]Of course, the passage of time may make an empirical inquiry difficult or impossible. *See Lackawanna County*, 532 U.S. at 403, 121 S. Ct. at 1574 ("As time passes, and certainly once a state sentence has been served to completion, the likelihood that trial records will be retained by the local courts and will be accessible for review diminishes substantially."). The possible harm from delay further bolsters our narrower interpretation of AEDPA's statute of limitations.

The interpretation of § 2255 ¶ 6(4) urged by Appellant is also inconsistent with the parallel habeas provision that applies to state prisoners, § 2244(d)(1). Under § 2244(d)(1)(D), the one-year limitation period runs from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Were we to adopt Appellant's interpretation of § 2255 and apply it to the parallel provision in § 2244, we would render redundant the word "factual" in § 2244, because all such predicates would be functionally "factual" in nature.

Others of our sister Circuits have interpreted "factual predicate" in § 2244 to mean historical facts, not court rulings or legal consequences. *See Hasan v. Galaza*, 254 F.3d 1150, 1154 & n.3 (9th Cir. 2001); *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000); *Ybanez v. Johnson*, 204 F.3d 645, 646 (5th Cir. 2000) (per curiam) (characterizing as an "extraordinary proposition" the argument that "the factual predicate of their claim consists neither of evidence nor events that happened at trial but in the state court's ruling on their constitutional claims"). As the Supreme Court commonly interprets § 2254 and § 2255 in light of each other, *see Lackawanna County*, 532 U.S. at 402, 121 S. Ct. at 1573, we interpret the limitations period of § 2255 consistently with the limitations period of § 2244. *See Brackett*, 270 F.3d at 69 ("Because § 2254 (habeas corpus from state convictions) and § 2255 (post-

9

conviction relief from federal convictions) are analogous to one another, the way the state habeas provisions are interpreted should be used to interpret § 2255(4).").

Finally, Appellant's interpretation of § 2255 ¶ 6(4) is contrary to the clear legislative purpose of AEDPA. It is generally accepted that one of the principal functions of AEDPA was to ensure a greater degree of finality for convictions. *See Duncan v. Walker*, 533 U.S. 167, 178, 121 S. Ct. 2120, 2127 (2001); *Williams v. Taylor*, 529 U.S. 420, 436, 120 S. Ct. 1479, 1490 (2000); *Jones v. United States*, 304 F.3d 1035, 1039 (11th Cir. 2002) ("A fundamental purpose for the AEDPA was to establish finality in post-conviction proceedings."); *Brackett*, 270 F.3d at 69 ("[O]ne of the signal purposes animating AEDPA is the desire of Congress to achieve finality in criminal cases, both federal and state."). Given the other substantial grounds for interpreting § 2255 ¶ 6(4) as we do, we cannot accept an alternative interpretation that would also run directly counter to the general congressional intent behind AEDPA and indefinitely extend the opportunity for post-conviction challenges.

Our view thus accords with that of the First Circuit. *See Brackett*, 270 F.3d at 68.[4] In *Brackett*, the petitioner pled guilty to federal criminal charges in July 1997, and he was sentenced as a career offender based on two prior state convictions. *Id.* at 62 His federal sentence became final on March 12, 1998. *Id.* On January 3, 2000,

---

[4]We have previously cited *Brackett* approvingly. *See Jones*, 304 F.3d at 1039.

he filed motions in state court to vacate his prior state convictions on the ground that he was denied effective assistance of counsel. *Id.* at 63. The state prosecutor's office agreed to the motions, and his prior state convictions were vacated without any judicial finding of a constitutional violation. *Id.* On December 18, 2000, the petitioner then filed a § 2255 petition to set aside his federal sentence. *Id.* at 62. Like Appellant, he claimed that his § 2255 petition was within one year of the vacatur of his state convictions, so that under § 2255 ¶ 6(4), his petition was timely. *Id.* at 64. The First Circuit disagreed, concluding "the operative date under § 2255(4) is not the date the state conviction was vacated, but rather the date on which the defendant learned, or with due diligence should have learned, the facts supporting his claim to vacate the state conviction." *Id.* at 68.

We recognize that the Fourth Circuit has recently disagreed with *Brackett*, *see United States v. Gadsen*, 332 F.3d 224 (4th Cir. 2003), but we respectfully differ with our sister circuit's interpretation of § 2255 ¶ 6(4).[5] In *Gadsen*, the petitioner pled no contest to a South Carolina assault charge on February 27, 1997. *Id.* at 225. On December 3, 1997, he was convicted in federal court of two federal crimes, and based

---

[5]As we explain *infra*, Part II.B, we would reach the same result as the Fourth Circuit in *Gadsen* on the facts as they appeared in that case, but we would do so on the basis of equitable tolling, not statutory construction. On the equitable tolling issue, however, Appellant's case is materially different from *Gadsen*.

in part on his February 1997 state conviction, was sentenced as a career offender. *Id*. On January 7, 1998—less than one year after his state conviction, merely a month after his federal conviction, and well before his federal conviction became final following appeal on June 1, 1999—the petitioner filed a petition in South Carolina state court for post-conviction relief from his state conviction. *Id*. On December 20, 1999, the South Carolina court granted his application for post-conviction relief, and the South Carolina Supreme Court declined to review that decision on January 10, 2001. *Id*. at 225–26. With this final order vacating his state conviction in hand, the petitioner filed a § 2255 petition on December 17, 2001, seeking to vacate his federal sentence on the ground that he was no longer a career offender. *Id*. at 226 The district court, however, dismissed his § 2255 petition as untimely. *Id*.

On appeal, the Fourth Circuit rejected *Brackett*'s interpretation of § 2255 ¶ 6(4), treating the South Carolina court's vacatur of the petitioner's state conviction as a "fact" within the meaning of that section. In particular, the Fourth Circuit relied upon a passage of the Supreme Court's opinion in *Daniels* in which the Court acknowledged that "after an enhanced federal sentence has been imposed . . . , the person sentenced may pursue any channels of direct or collateral review still available to challenge his prior convictions." *Id*. at 228 (quoting *Daniels*, 532 U.S. at 382, 121 S. Ct. at 1583). The Fourth Circuit reasoned that, if it did not interpret

12

§ 2255 ¶ 6(4) liberally, "we would be punishing Gadsen and other litigants like him for having faithfully followed these instructions [from *Daniels*]." *Id.*

We think the Fourth Circuit reads the language of *Daniels* for much more than it is worth. To be sure, "[t]he entire point of *Custis* and *Daniels* was that litigants should not bypass state courts to litigate the facts underlying their state convictions during challenges to a federal sentencing determination." *Id.* But as the First Circuit aptly put it in *Brackett*, *Custis* and *Daniels* answer the question of *where* a federal prisoner may bring an attack on a prior state conviction in order to mount an indirect attack on a federal sentence, while the question in this case (as in *Brackett* and *Gadsen*) is *when* that indirect attack may be brought. *See Brackett*, 270 F.3d at 66. The language of *Daniels* on which the Fourth Circuit relies merely outlines the procedure that a federal prisoner must follow to bring an indirect attack on his federal sentence. The "when" question was not present in *Daniels*, so the Supreme Court did not address it and the relevant passage of *Daniels* does not speak to the time limits that apply. The Fourth Circuit reads the Supreme Court's silence on this issue as dictating one interpretation of § 2255 ¶ 6(4) when it does no such thing. *Cf. Barnhart*

13

*v. Walton*, 535 U.S. 212, ___, 122 S. Ct. 1265, 1270 (2002) ("[S]ilence, after all, normally creates ambiguity. It does not resolve it.").[6]

Thus, we hold with the First Circuit and *contra* the Fourth Circuit that the purported "fact" of a state court's vacatur of a federal prisoner's prior state convictions is not a "fact supporting the claim or claims" under § 2255 ¶ 6(4) from which AEDPA's statute of limitation will run. In this case, Appellant knew all of the facts supporting his challenge to his state convictions before his federal conviction became final. On direct appeal, he attempted to argue his prior state convictions had been obtained in violation of his right to counsel, and it is probable that this was the unstated basis for his initial objection to the pre-sentence investigation report that Appellant withdrew at his sentencing hearing. Appellant was therefore aware of all the relevant operative facts before his conviction became final. Absent some basis for equitable tolling, discussed *infra*, he had to file his § 2255 motion within the one-year grace period following AEDPA's enactment, or by April 23, 1997. Appellant

---

[6]We do not mean to suggest that the "when" question is entirely irrelevant to the "where" question the Supreme Court answered in *Daniels*. *Daniels* would make little sense if, in many ordinary cases, a petitioner seeking to make an indirect attack would find himself permanently shut out of federal court when he brings his § 2255 petition. As we explain *infra*, however, equitable tolling may be available to a petitioner who acts with the requisite diligence in bringing an indirect attack on his federal sentence. *See infra* Part II.B. The availability of that equitable remedy helps to render the procedure outlined in *Daniels* fair and just.

did not file his present § 2255 petition until February 13, 2001, so we conclude his petition was untimely under AEDPA.

B. Equitable Tolling

Appellant also argues he is entitled to equitable tolling of the AEDPA statute of limitations. We have held that equitable tolling is appropriate when a prisoner's § 2255 petition is untimely because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence. *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1286 (11th Cir. 2002); *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999). We have emphasized, however, that equitable tolling applies only in truly extraordinary circumstances. *Jones*, 304 F.3d at 1039–40; *Drew*, 297 F.3d at 1286. Appellant bears the burden of establishing that he is entitled to this extraordinary relief. *See Helton v. Sec'y for Dep't of Corr.*, 259 F.3d 1310, 1313–14 (11th Cir. 2001).

On the facts of this case, Appellant cannot show that the delay in filing his initial § 2255 petition was the result of extraordinary circumstances that were beyond his control even with the exercise of due diligence. Appellant was plainly aware of whatever facts supported his collateral attack on his prior state convictions at the time his federal sentence became final in 1996. He did not commence his challenge to the state convictions until February 1998, nearly two years later. Had Appellant been

acting with due diligence, he would have attacked his state convictions immediately after his federal sentence became final, or perhaps even before he was sentenced on the federal offense. Yet Appellant has not even proffered any explanation or excuse that might show why the delay in attacking his underlying state convictions was beyond his control.

By way of comparison, Appellant has even less of a claim for equitable tolling than the petitioner in *Sandvik*. In that case, the petitioner's lawyer mailed his § 2255 petition from Atlanta to the district court in Miami on April 18, 1997. *Sandvik*, 177 F.3d at 1270. The district court file-stamped the motion on April 25, 1997. *Id*. Because the petitioner's conviction was final prior to the effective date of AEDPA, his § 2255 motion was due no later than April 23, 1997, in accord with the one-year grace period following the enactment of AEDPA. *Id*. Thus, despite counsel's attempt to meet the deadline, the petition was untimely. When petitioner argued for equitable tolling on appeal, we concluded that petitioner's counsel could have mailed the petition earlier or used a private delivery service or a private courier to be certain that it was timely filed. *Id*. at 1272. As it was not a circumstance beyond petitioner's control with the exercise of due diligence, we found no ground for equitable tolling. *Id*. Unlike the petitioner in *Sandvik*, who at least attempted to file a petition within the one-year grace period, Appellant made no similar attempt to act diligently in this

16

case. Rather, he did not even file the state post-conviction challenges on which his § 2255 petition was predicated until nearly two years after his federal conviction became final, despite knowing the basis for those state challenges at the time of his conviction. This is therefore hardly an extraordinary case in which petitioner was unable to meet the deadline through no fault of his own.

Appellant attempts to rescue his argument for equitable tolling by pointing to his April 25, 1997 motion in federal district court seeking to extend the time to file his § 2255 petition. Appellant claims the district court's denial of that motion without prejudice led him believe that he could still file a § 2255 petition at a later date. Yet the district court's order dismissing Appellant's 1997 motion found it to be untimely under § 2255 ¶ 6(1), and it only suggested that he could subsequently file a § 2255 petition if he could establish one of the later accrual dates set forth in § 2255 ¶ 6. As explained *supra*, however, Appellant cannot come within § 2255 ¶ 6(4) to establish a later accrual date.

Appellant also points to the footnoted caveat in our opinion affirming his sentence on direct appeal, claiming the caveat misled him into thinking § 2255 relief would be available whenever he successfully attacked his state convictions. Nothing in our caveat suggested that Appellant could take an unlimited time to commence his

17

collateral attack on his state convictions.[7]  In addition, our opinion affirming his conviction issued prior to the effective date of AEDPA; the caveat may not have contemplated the effect of the new AEDPA limitations period.  Following the enactment of AEDPA, Appellant still had the entire one-year grace period within which to take *some* action to attack his conviction and sentence, yet he did nothing.

This is the fundamental problem that plagues Appellant's argument:  the long delay before he commenced his state collateral attacks.  *Drew* presented a somewhat similar scenario.  In that case, the petitioner filed a timely § 2254 petition, which the district court dismissed without prejudice while ordering the petitioner to first file a third state motion for post-conviction relief.  *See Drew*, 297 F.3d at 1287.  Though the petitioner complied with the district court's order, we concluded that equitable tolling was not warranted in that case in part because the petitioner delayed filing the state motion.  *Id.*  If the timeliness of that petitioner's initial § 2254 petition did not justify equitable tolling because of his subsequent delay, it is impossible to find any justification for equitable tolling in this case, where Appellant's initial motion was not even timely in the first place.

---

[7]In this respect, our caveat is like the passage of *Daniels* that the Fourth Circuit over-emphasizes; our statement, like the Supreme Court's statement in *Daniels*, says nothing about the applicable time limits for an indirect attack.  This is not surprising, since our caveat was explicitly noted "in passing."  One cannot infer from such a passing statement how the background statute of limitations would apply to Appellant when he finally got around to bringing his indirect attack on his federal sentence.

The facts of *Gadsen* are usefully illustrative on this point. The petitioner in *Gadsen* collaterally attacked his prior state conviction in state court before his federal conviction and sentence were even final. *Gadsen*, 332 F.3d at 225. His state collateral attack was pending in the South Carolina courts for three years, until he ultimately prevailed. *Id.* at 226. If that petitioner were not given the benefit of equitable tolling, then under our interpretation of § 2255 ¶ 6(4), he would be precluded from carrying out his indirect attack for no other reason that the state courts' delay. Such a result would obviously be unfair. Under our circuit precedents, however, we would readily conclude the South Carolina courts' delay in finally disposing of the petitioner's state collateral attack amounted to an extraordinary circumstance beyond the petitioner's control. And because the petitioner launched his challenge in the South Carolina state courts before his federal conviction was final, there can be no doubt as to the petitioner's diligence in pursuing his claims. Thus, while we depart from the Fourth Circuit's opinion on the issue of statutory interpretation, *see supra* part II.A, on the facts of *Gadsen* we would ultimately reach the same result as our sister circuit by allowing that petitioner equitable tolling.

The facts of the present petition, however, are materially different from those in *Gadsen*; the crucial point here is that Appellant did nothing during the one-year AEDPA grace period to attack his prior state convictions collaterally. Unlike the

petitioner in *Gadsen*, Appellant did not commence his state collateral attack until almost two years after his federal sentence became final, and then nearly one year after AEDPA's one-year grace period expired. Given that delay, we are compelled to find there are no extraordinary circumstances in Appellant's case, nor can we conclude that Appellant acted with appropriate diligence. We cannot allow equitable tolling of the AEDPA limitations period on the facts of this case.[8]

## III. CONCLUSION

We hold the vacatur of Appellant's prior state convictions is not a "fact supporting the claim or claims" within the meaning of 28 U.S.C. § 2255 ¶ 6(4). Under the statute of limitations that applies to § 2255 petitions, Appellant's petition was therefore untimely. Further, we hold Appellant cannot show, on the facts of this case, that his petition was untimely because of extraordinary circumstances beyond

---

[8]In a final effort to get the benefit of equitable tolling, Appellant claims the denial of equitable tolling would be unconstitutional suspension of the writ of habeas corpus. We have already held that the AEDPA limitations periods do not *per se* constitute a suspension of the writ. *See Tinker v. Moore*, 255 F.3d 1331, 1334 (11th Cir. 2001); *Wyzykowski v. Dep't of Corr.*, 226 F.3d 1213 (11th Cir. 2000). Appellant's argument therefore fails.

In addition, we do not reach Appellant's further argument—raised for the first time on appeal—that the failure to reach the merits of his § 2255 petition would amount to a miscarriage of justice. Arguments not raised in the district court are waived. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

his control and unavoidable even with the exercise of due diligence.  He therefore is not entitled to equitable tolling.

AFFIRMED.

RONEY, Circuit Judge, dissenting:

I respectfully dissent. In my judgment, Johnson's February 13, 2001 § 2255 petition for writ of habeas corpus should not have been dismissed as untimely because the one-year statute of limitation on the claim asserted did not begin to run until October 24, 2000, the date the state court vacated Johnson's July 5, 1989 state conviction for distribution of cocaine – one of the two prerequisite state convictions relied upon by the district court to enhance Johnson's sentence under the career offender category of the Sentencing Guidelines.

Contrary to the Court's opinion, I think a decision of a state court reversing a state criminal conviction is a "fact" within the meaning of 28 U.S.C. § 2255 ¶ 6(4). *See United States v. Gadsen*, 332 F.3d 224, 229 (4th Cir. 2003) (holding that "the federal statute of limitations begins running when the state court conviction is conclusively invalidated"); *United States v. Hoskie*, 144 F. Supp.2d 108, 111 (D. Conn. 2001) (holding that "the one-year statute of limitations starts to run on the date the state convictions are vacated, not an earlier date when the defendant discovered the facts forming the basis for the attack on the state convictions").

With this Court's decision and the decision in *Brackett v. United States*, 270 F.3d 60, 68 (1st Cir. 2001) (holding that "the operative date under § 2255(4) is not the date the state conviction was vacated, but rather the date on which the defendant

22

learned, or with due diligence should have learned, the facts supporting his claim to vacate the state conviction"), there is a clear split in the circuits, which at some point should be resolved by Congress or the Supreme Court. Without question, if the rule announced in this decision and in *Brackett* is consistently applied, in some circuits there will be defendants serving time in federal prison under a federal sentence based upon conviction of a state crime that the state court has authoritatively held the defendant unquestionably did not commit, who would be barred from relief, while in other circuits relief from such imprisonment will be readily available.

The relevant section, 28 U.S.C. § 2255 ¶ 6(4), provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>         . . . .
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

As a "fact" within the meaning of this section, it is obviously new and not previously discoverable because until the state court actually entered the judgment reversing seven outstanding convictions, including Johnson's July 5, 1989 conviction, it had yet to happen and therefore, by definition, could not be a fact at all. *See* Black's Law Dictionary 610 (7th ed. 1999) (defining "fact," "1. Something that actually exists"); Webster's Third New International Dictionary 813 (1993) (defining

"fact," "1: a thing done"); The American Heritage Dictionary of the English Language 46 (1975) (defining "fact," "1. something known with certainty"); Black's Law Dictionary 738 (3d ed. 1933) (defining "fact," "1– a thing done"); *see also United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir.1998) (en banc) ("Where the language Congress chose to express its intent is clear and unambiguous, that is as far as we go to ascertain its intent because we must presume that Congress said what it meant and meant what it said."). Until that date, the fact was that Johnson stood convicted of those numerous crimes. The fact that he does not now stand convicted of those crimes clearly supports his claim because: (1) those seven vacated convictions were relied upon by the sentencing court in one way or another in deriving Johnson's total offense level of 25 and a criminal history category of 6; and (2) only *one* of the two required convictions relied upon by the district court to enhance Johnson's sentence as a career offender was a valid conviction. Without Johnson's vacated July 5, 1989 state conviction for distribution of cocaine, the undeniable fact is that he was not a career offender within the meaning of the Sentencing Guidelines. *See, e.g., United States v. Duty*, 302 F.3d 1240, 1241 (11th Cir. 2002) (noting that a defendant is a "career offender" under the Sentencing Guidelines if, *inter alia*, "the defendant has at least two prior felony convictions for either a crime of violence or a controlled substance offense"); U.S.S.G. § 4B1.1. The

sentencing court did not rely upon the underlying conduct that resulted in those convictions, but instead simply relied upon the mere fact that those were valid state court convictions, as recited in the Presentence Investigation Report ("PSI").

Johnson's PSI indicates a total offense level of 25 and a criminal history category of 6, qualifying him for a sentencing range of 110 to 137 months' imprisonment. *See* U.S.S.G. Ch. 5, Pt. A. The district court, however, relied upon the "facts" of *two* prior state convictions to boost Johnson into the career offender category and thus increase his sentence: (1) a July 5, 1989 conviction for distribution of cocaine; and (2) a November 13, 1989 conviction for sale of cocaine. Utilizing the career offender enhancement, the district court enhanced the total offense level from 25 to 32 with a criminal history category of 6, qualifying Johnson for a sentencing range of 151 to 188 months' imprisonment. *See id.* § 4B1.1(b). The district court sentenced Johnson to 188 months' imprisonment, the highest end of that sentencing range. *See id.* Ch. 5, Pt. A.

As a timely petition, the case should be remanded for the district court to consider Johnson's claims on the merits. If that petition is granted and a resentencing is ordered, Johnson may indeed be faced with some new problems.

Johnson's state petition did not assert that he was innocent of the facts which supported his conviction, but simply alleged that although he pled guilty in each case,

25

the convictions were nonetheless invalid because he did not affirmatively waive his right to counsel. The state made no genuine attempt to defeat his claim, perhaps because Johnson had already served the state prison sentences accompanying those state convictions. This lack of defense to the state petitions is reflected in the state court's opinion, which leaves some doubt as to whether Johnson met the *Strickland* standard for relief from a claim of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The state court's opinion reads as follows:

> Petitioner, after being sentenced to an enhanced sentence because of certain state convictions, filed his Petition for Writ of Habeas Corpus alleging that his pleas in seven cases in Cook County Superior Court were not voluntary in that he did not knowingly, intelligently and voluntarily waive his right to counsel at the hearing on the entry of his guilty pleas. The cases that were challenged by Petition were numbered 83F-9 [Feb. 11, 1989 – burglary], 88F–32 [Mar. 9, 1988 – conversion], 88M-43 [Mar. 9, 1988 – contempt], 89F-122 [July 5, 1989 – distribution of cocaine], 90F-383 [Dec. 5, 1990 – theft and violation of probation], 92F-36 [Mar. 11, 1992 – possession of cocaine] and 93F-148 [April 21, 1993 – possession of cocaine] filed in Cook County Superior Court.

> Petitioner . . . filed copies of the plea petitions that accompanied the entry of his pleas. These pleas contained questions about his waiver of the presence and use of an attorney.

> The State responded denying the allegations but have not filed any further transcripts of the hearing which would support their position.

> This Court findings that the record in these cases does not show an affirmative waiver of his right to an attorney. . . .

26

IT IS HEREBY ORDERED that Petitioner's Petition For Writ of Habeas Corpus is hereby GRANTED and the convictions in the above-cited cases are hereby reversed.

Regardless of the ground for the decision, this state court judgment reversed those convictions, and they are no longer valid convictions upon which a sentencing court could rely. That state court judgment is entitled to the same fact analysis as if the convictions had been reversed on the basis of irrefutable evidence that a defendant was in fact innocent of the crimes for which he had been convicted. If the state court's vacatur of the seven state convictions came before the sentencing in this case, it would have been clear error for the court to rely on the fact of conviction. Without those convictions to rely upon, an analysis of Johnson's PSI would show: (1) only three criminal history points derived from Johnson's November 13, 1989 sale of cocaine conviction, corresponding to an offense level of 25 and a criminal history category of 2; and (2) an insufficient number of prior offenses (one) to support a career offender enhancement.

At the time of sentencing, the PSI properly noted that U.S.S.G. § 4A1.3 provides that a sentencing court may depart upward if "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3. This Court has affirmed several circumstances

where a district court applied an upward departure under § 4A1.3. *See, e.g.*, *United States v. Jones*, 289 F.3d 1260 (11th Cir. 2002) (two-level criminal history category upward departure for a defendant's prior juvenile offenses and other offenses too remote to use in calculating a criminal history under the guidelines); *United States v. Hernandez*, 160 F.3d 661 (11th Cir. 1998) (one-level criminal history category upward departure for a defendant's prior non-criminal misconduct related to the sentenced offense); *United States v. Spraggins*, 868 F.2d 1541 (11th Cir. 1989) (three-level criminal history upward departure for defendant with history of molesting children, the need to deter such conduct in the future, and to account for defendant's older previous crimes); *United States v. Dorsey*, 888 F.2d 79 (11th Cir. 1989) (upheld district court's upward departure to a career offender, even though defendant did *not* have two qualifying prior felony convictions under 4B1.1).

Based on the information contained in the PSI, it may well be that a departure upward would be appropriate, but these are matters not before us at this time. The sole issue before us is whether Johnson's § 2255 petition is timely because it was filed within one year of the Georgia state court's vacatur of Johnson's seven prior state convictions. I would hold that it was timely, would reverse the decision of the district court to the contrary, and would remand to the district court for consideration of the petition on its merits.