

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-27-2007

# McAleese v. Brennan

Precedential or Non-Precedential: Precedential

Docket No. 04-1439

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"McAleese v. Brennan" (2007). *2007 Decisions*. Paper 1152.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1152

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-1439

———

FRANK G. MCALEESE,

Appellant

v.

EDWARD T. BRENNAN, SUPERINTENDENT;
PENNSYLVANIA BOARD OF PROBATION AND PAROLE

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 02-02893)
District Judge: Honorable Thomas N. O'Neill, Jr.

———

Submitted under Third Circuit LAR 34.1(a)
March 16, 2007

BEFORE: FUENTES, GREENBERG
and LOURIE*, Circuit Judges

(Filed: April 27, 2007)

———

———

*Honorable Alan D. Lourie, United States Circuit Judge for the
Federal Circuit, sitting by designation.

1

Mary Gibbons
600 Mule Road, #16
Holiday Plaza III
Toms River, NJ 08757

   Attorney for Appellant

Thomas W. Corbett, Jr.
Attorney General
Calvin R. Koons
Senior Deputy Attorney General
John G. Knorr, III
Chief Deputy Attorney General
Chief, Appellate Litigation Section
Office of the Attorney General
Appellate Litigation Section
15th Fl., Strawberry Square
Harrisburg, Pa. 17120

   Attorneys for Appellees

------

OPINION OF THE COURT

------

GREENBERG, <u>Circuit</u> <u>Judge</u>.

## I. INTRODUCTION

This matter comes on before the court on an appeal from an order entered on October 22, 2003, by the district court approving and adopting a magistrate judge's report and recommendation and denying as untimely Frank G. McAleese's petition for a writ of habeas corpus that he filed on March 2, 1998. In his petition, McAleese, a state prisoner currently confined at the State Correctional Institution at Albion,

Pennsylvania,[1] challenges the September 2, 1995 decision of the Pennsylvania Board of Probation and Parole ("PBPP")[2] denying him parole and requiring that he participate in a sex offender treatment program. We are not concerned, however, with the merits of the PBPP decision as we granted a certificate of appealability solely on the question of "whether the District Court erred in dismissing [McAleese's] habeas corpus petition as untimely." The gravamen of McAleese's argument is that the PBPP's failure to turn over documents opposing his release that the Philadelphia District Attorney and a supervising judge of the Philadelphia County Court of Common Pleas submitted to it tolled the limitations period under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") to such an extent that his petition was timely. As a matter of convenience, we refer to the documents as if the district attorney submitted all of them. For the reasons that follow, we will affirm the order of the district court.

## II. FACTS AND PROCEDURAL HISTORY

In 1983, after a Philadelphia County jury found McAleese guilty of third-degree murder for killing his ex-wife and for possession of an instrument of a crime,[3] the state trial court sentenced him to consecutive custodial terms of ten to twenty years and two and one half to five years, respectively, on the convictions. Following his sentencing McAleese unsuccessfully pursued direct appeals and post-conviction relief.

---

[1]McAleese is scheduled for release in December 2007, at which time he will have served his full 25-year sentence.

[2]In addition to the PBPP, McAleese brings this habeas corpus action against the correctional institution's superintendent, Edward T. Brennan.

[3]We need not recite the details of the crime. We did so, however, in McAleese v. Mazurkiewicz, 1 F.3d 159 (3d Cir. 1993), a case in which McAleese sought relief from the conviction and sentence.

In 1995, after twelve and one half years of incarceration, McAleese became eligible for parole. McAleese contends that on March 6, 1995, the institution staff recommended that the PBPP grant him parole and release him to a halfway house, predicating its recommendation on his exemplary prison record and his completion of various prison programs. On March 27, 1995, however, the institution staff advised McAleese that the district attorney who had prosecuted the case had submitted correspondence opposing his release to a halfway house. McAleese alleges that, based on that correspondence, which he was unable to obtain either at that time and, as will be seen, for some years thereafter, the institution rescinded the favorable parole recommendation.

Nevertheless, the PBPP conducted a hearing on McAleese's case on July 12, 1995. On September 2, 1995, the PBPP advised McAleese that it was denying him parole and that it would not reconsider a parole application from him until July 2000. According to the PBPP, it denied McAleese parole for the following reasons: poor prison adjustment, habitual offender, assaultive instant offense, highly assaultive behavior potential, victim injury, weapon involved in the commission of the offense, need for counseling, and unfavorable recommendation from the Pennsylvania Department of Corrections ("DOC"). The PBPP also advised McAleese that it was requiring him to participate in a sex offender program.

Thereafter, McAleese began challenging his parole denial and the requirement that he participate in a sex offender program. As early as September 11, 1995 (a little more than one week after the parole denial), he notified the DOC that he believed that there was no "factual basis whatsoever" for the parole denial which he believed was a retaliatory act for his failure to cooperate with the district attorney in the 1986 murder prosecution of a fellow inmate, Wilfredo Santiago, who was charged with murdering a Philadelphia police officer.[4] App. at

---

[4]Commonwealth v. Santiago, 822 A.2d 716 (Pa. Super. Ct. 2003), sets forth the history of the Santiago case until the time of that opinion.

4

358. At that time he reiterated his request for disclosure of the correspondence the district attorney sent to the PBPP. Moreover, he began sending letters to the PBPP objecting to having to participate in the sex offender program.

Inasmuch as he was unsuccessful in his efforts to avoid the direction to participate in the sex offender program and to obtain the correspondence opposing his parole, McAleese obtained counsel who for the next several years sent requests to the PBPP, the DOC, and the district attorney seeking release of the district attorney's letters. All three agencies, however, rejected these requests. The DOC told his counsel that the records are not "public records" within the meaning of Pennsylvania's Right-to-Know Act, and, in any event, it could not locate the requested records. Id. at 101. The PBPP indicated that the information McAleese sought was "privileged," app. at 366, a response similar to that of the district attorney who cited "confidentiality protections" in refusing to disclose the letters, id. at 378.

On March 2, 1998, about two and one half years after the PBPP denied him parole, McAleese filed a pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 in the United States District Court for the Western District of Pennsylvania. The petition challenged the PBPP's denial of his parole application and its requirement that he participate in the sex offender program, contending that the determination and direction were arbitrary, capricious, and in violation of his equal protection and due process rights. McAleese alleged that the PBPP's purported reasons for the decisions were pretextual and its real reasons were that it (1) was retaliating against him at the insistence of the district attorney for his refusal to testify helpfully for the prosecution in the original Santiago murder trial, and (2) was trying to coerce him to change his testimony for Santiago's pending retrial.[5] Respondents answered, asserting the procedural

[5]According to McAleese, while he was awaiting sentencing in 1983, the police asked him to sign a statement indicating that Santiago had confessed his guilt to him. McAleese also asserts that the police urged him to testify against Santiago. McAleese refused both requests,

5

contentions that the petition was time-barred and McAleese failed to exhaust his administrative remedies and the substantive contention that the petition was without merit.

The magistrate judge issued a report and recommendation, recommending that the court dismiss the petition for failure to exhaust administrative remedies. On May 17, 1999, the district court approved and adopted the report and recommendation and thus dismissed the petition on the ground that McAleese had not exhausted his state remedies before seeking relief in the district court. On McAleese's appeal, however, we vacated that dismissal after we decided Coady v. Vaughn, 251 F.3d 480 (3d Cir. 2001),[6] because McAleese's claims were not subject to state judicial review in Pennsylvania and thus he had no remedies to exhaust. See McAleese v. Brennan, No. 99-3468 (3d Cir. Nov. 21, 2001) (unpublished). We did not express an opinion on the timeliness issue, stating:

> [W]hether McAleese's petition is time-barred is a matter best addressed in the first instance by the District Court, which has yet to reach this question. Assuming arguendo that AEDPA's one year statute of limitations applies to McAleese's petition, McAleese has provided

reported the alleged conduct of the police to counsel and the press, and testified at Santiago's trial that Santiago did not confess anything to him. The jury convicted Santiago at the trial but on appeal he obtained a reversal and the resulting retrial was pending at the time of McAleese's 1995 parole hearing. According to McAleese, the district attorney's office needed his testimony at Santiago's retrial and wanted him to remain in prison to coerce him into testifying.

[6]In Coady, after certification of the issue to the Pennsylvania Supreme Court and the receipt of that court's opinion, we stated that under Pennsylvania law there were no available state-court remedies to exhaust challenging discretionary parole denial, and thus a prisoner may file a habeas corpus petition in a federal court challenging the denial without exhausting state remedies. Coady, 251 F.3d at 488-89.

> reasons for equitable tolling which
> are not self-evidently meritless and
> which turn on factual determinations
> which should be made by the District
> Court.
>
> . . .
>
> We express no opinion concerning
> whether the statute of limitations
> applies in this case, or, if it does,
> whether it bars McAleese's petition.

Id. at 4-5. Accordingly, we remanded the case to the district court, which transferred it to the Eastern District of Pennsylvania. While the judicial proceedings were pending, the PBPP on August 8, 2000, and October 30, 2001, again denied McAleese parole, explaining that he showed no remorse for his commission of the crime and presented a continued danger to the community. McAleese has not challenged these denials in separate habeas corpus proceedings.

On May 30, 2002, the district court in the Eastern District ordered McAleese to complete that court's forms for filing a habeas corpus petition pursuant to section 2254, and McAleese did so on June 20, 2002, restating the claims that he had made in the Western District. Respondents answered that the PBPP's actions were not retaliatory, and that the PBPP was not attempting to coerce him to testify in the Santiago case. They further contended that the court should dismiss McAleese's petition because it was time-barred and because he failed to exhaust his remedies with respect to some of the claims.

Significantly, in respondents' answer to the petition, they disclosed the correspondence from the district attorney that they previously withheld. Thus, they produced four separate letters opposing McAleese's release:

- A letter dated February 23, 1995, from the district attorney to the superintendent of the DOC institution

7

opposing any pre-release programming for McAleese.

- A letter dated February 28, 1995, from Hon. Legrome D. Davis, then the supervising judge of the Philadelphia County Court of Common Pleas, to the PBPP at the recommendation of the district attorney opposing parole.

- A letter dated April 12, 1995, from the district attorney to the PBPP indicating that the district attorney's office is "most strenuously opposed for any parole consideration for this brutal murder."

- A letter dated August 16, 2000, from the district attorney to the PBPP indicating that the district attorney's office "cannot overstate [its] satisfaction with the Board's action."  The letter goes on to provide additional allegations that it wanted to be included in McAleese's file, including that he had filed a civil action[7] against the district attorney's office and an assistant district attorney and that he had authored an anonymous letter purporting to be from a Philadelphia police officer.

Upon review of the materials submitted, the magistrate judge recommended that the court dismiss the petition as untimely.  The magistrate judge concluded that because direct review of McAleese's conviction ended before the AEDPA's effective date, he had one year from its effective date, i.e., until April 23, 1997, to file his petition.  However, McAleese did not file his petition until March 2, 1998.  The magistrate judge further concluded that subsection (D) of section 2244(d)(1) extending the time for the filing of a petition for habeas corpus for one year after a petitioner knows or should know of the factual predicate for his claims, did not extend the filing deadline beyond April 23, 1997, because McAleese was cognizant of the "factual predicate" of his claims on the day that the PBPP denied

---

[7]The complaint in the civil action, which includes the PBPP as a defendant, is attached to the letter.

him parole, September 2, 1995. Additionally, the magistrate judge found that McAleese had failed to present any evidence to justify equitable tolling of the statute of limitations, and that there was no basis for the court to toll the statute of limitations by reason of the subsequent denials of parole as they did not amount to "continuing violations" of McAleese's rights. On October 22, 2003, the district court entered an order approving and adopting the magistrate judge's report and recommendation, and, accordingly, dismissing the petition as being untimely.

On January 30, 2004, the district court entered an order permitting McAleese to file an appeal nunc pro tunc which McAleese did within the permitted period on February 18, 2004. As we indicated at the outset of this opinion, we granted a certificate of appealabilty on August 31, 2004, "with regard to the question whether the District Court erred in dismissing [McAleese's] habeas corpus petition as untimely," and we now resolve that issue.[8]

## III. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction under 28 U.S.C. §

_____

[8]"A certificate of appealabilty may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. 2253(c)(2). The question of whether a petition is timely relates to a procedural issue, not a constitutional right, and thus a petitioner is not entitled to a certificate of appealability on an appeal from the denial of a petition on timeliness grounds unless he makes a preliminary showing with respect to the two requirements for a petition that Slack v. McDaniel, 529 U.S. 473, 484-85, 120 S.Ct. 1595, 1604 (2000), set forth. In Slack, the Court concluded that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. at 484, 120 S.Ct. at 1604.

2254. Upon our issuance of a certificate of appealabilty, we obtained jurisdiction over this appeal under 28 U.S.C. §§ 1291 and 2253. Our review of the order denying the habeas corpus petition in this case as time-barred is plenary. See Douglas v. Horn, 359 F.3d 257, 259 (3d Cir. 2004).

## IV. DISCUSSION

McAleese makes three arguments on this appeal. First, he argues that the "factual predicate" of his claims under section 2244(d)(1)(D) is the disclosure of the content of the district attorney's correspondence, not the denial of the parole, and thus the limitations period did not begin to run until its disclosure in 2002 in the answer to his June 20, 2002 restated petition filed in the Eastern District on its forms. If he is correct on this point, his petition surely could not have been late as he filed it before the disclosure. Second, he argues that even if the denial of the parole is the "factual predicate" triggering the running of the statute of limitations, the time of the last of three parole denials in 2001 is the appropriate date at which to look for the purposes of application of the AEDPA's limitations period because the PBPP continued to receive additional correspondence from the district attorney up until that time. Thus, he views this case as involving a "continuing violation" of his rights. Third, McAleese argues that we should equitably toll the limitations period because for seven years the district attorney, the PBPP and the DOC did not divulge the documents that he sought. For the reasons that follow, we will affirm the decision of the district court to dismiss the petition as untimely.

A.   Factual predicate

Under the AEDPA there is a one-year limitations period in which a person in custody pursuant to a state-court judgment may file an application for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The period begins to run from the latest of: (A) the date on which the state-court judgment pursuant to which he is in custody becomes final; (B) the date on which an

unconstitutional impediment to filing the application is removed; (C) the date on which the Supreme Court recognizes a new constitutional right asserted in the application (so long as the right is retroactively applicable to cases on collateral review); and (D) "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Id. Additionally, if direct review of a criminal conviction, or in this case a decision with respect to parole, ended before the AEDPA's effective date of April 24, 1996, a prisoner has a one-year grace period after the effective date to file a habeas corpus petition, i.e., until April 23, 1997. Burns v. Morton, 134 F.3d 109, 111 (3d Cir. 1998).

In this case, McAleese is challenging the 1995 parole denial and thus section 2244(d)(1) and the one-year grace period, which expired on April 23, 1997, were applicable to his petition.[9] McAleese, however, filed his petition on March 2,

---

[9]We seem not to have determined whether a habeas corpus petition challenging the denial of parole by a parole board is subject to section 2244(d)(1)'s timeliness requirements. McAleese, however, has not claimed that it is not applicable and inasmuch as the district court and the parties on this appeal have treated it as applicable we will as well. In any event, we note that most courts of appeals that have addressed the issue have held that a petition challenging an administrative decision regarding parole or imposing discipline is subject to section 2244(d)(1) because the limitations period applies to all habeas corpus petitions filed by persons "in custody pursuant to the judgment of a State court," 28 U.S.C. § 2244(d)(1). See Shelby v. Bartlett, 391 F.3d 1061, 1062 (9th Cir. 2004); Wade v. Robinson, 327 F.3d 328, 331-32 (4th Cir. 2003); Cook v. N.Y. State Div. of Parole, 321 F.3d 274, 280 (2d Cir. 2003); Kimbrell v. Cockrell, 311 F.3d 361, 363 (5th Cir. 2002). But see Cox v. McBride, 279 F.3d 492, 493 (7th Cir. 2002) (holding that prisoner's petition challenging additional two years on prisoner's original sentence as a result of the decision of the prison disciplinary board is not subject to section 2244(d)(1)). According to the majority of the courts of appeals, so long as the petitioner is in custody pursuant to a state-court judgment, all challenges to subsequent administrative decisions relating to his custody must comply with the limitations period under section 2244. This conclusion seems reasonable, at least with respect to a decision denying parole, as that decision is not a

1998, and thus his petition appears to be untimely. McAleese attempts to save his petition by arguing that he did not discover the "factual predicate" of his claims until 2002 when respondents disclosed the correspondence from the district attorney to the PBPP. Accordingly, in his view, his petition was timely because of the application of section 2244(d)(1)(D). The magistrate judge rejected the argument, stating, "[i]n this case, the limitations period would arguably run from the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence, which would be the date that Petitioner was denied probation[10] on September 2, 1995." App. at 11. The district court approved and adopted that holding.

McAleese argues that the magistrate judge and district court erred because the denial of parole in 1995 was not the "factual predicate" of his claims, but rather, "[t]he factual predicate which [he] was required to diligently act to discover was, in fact, the content of the [district attorney's] correspondence and the PBPP's reliance thereon, not merely the existence of such correspondence," and "[t]he legal event of the parole denial and the fact that [he] was aware that something had been submitted that was withheld from him, simply triggered his diligent effort to obtain that material."[11] Appellant's br. at 18-19. We disagree with him for the following reasons.

In order to determine the "factual predicate of the claim or claims presented" for purposes of section 2244(d)(1)(D), we first must identify McAleese's claims. He asserts four grounds that he believes constitute an "unconstitutional execution of [his] sentence," app. at 18, but, boiled to their essence, his claims are

---

determination placing a petitioner in custody. Rather, it merely does not terminate the petitioner's custody pursuant to earlier proceedings.

[10]The magistrate judge obviously meant parole, not probation.

[11]Respondents do not contend that McAleese did not exercise due diligence in an effort to obtain the material. Thus, we will assume that he did so.

12

two-fold. First, he believes that the PBPP unjustifiably denied him parole because his testimony was unfavorable to the prosecution in the <u>Santiago</u> murder case and the district attorney was trying to deter him from testifying in the same way at Santiago's retrial. Second, he believes that the requirement that he participate in a sex offender program even though he had not committed a sex offense was unjustified and was intended to foreclose his opportunity for parole because completion of the program would be impossible.[12]

Having defined the contours of McAleese's claims, we set forth their "factual predicate" as 2244(d)(1)(D) uses that term. Though the AEDPA does not define "factual predicate," we have held that "[s]ection 2244(d)(1)(D) provides a petitioner with a later accrual date than section 2244(d)(1)(A) only if <u>vital facts</u> could not have been known." <u>Schlueter v. Varner</u>, 384 F.3d 69, 74 (3d Cir. 2004), <u>cert. denied</u>, 544 U.S. 1037, 125 S.Ct. 2261 (2005) (internal quotation marks omitted) (emphasis added). Therefore, under <u>Schlueter</u>, the "factual predicate" of a petitioner's claims constitutes the "vital facts" underlying those claims.

In this case, there is no doubt that the "vital facts" underlying McAleese's claims are the denial of his parole application in an alleged attempt to coerce him to cooperate in the <u>Santiago</u> case and the decision to require him to participate in the sex offender program, not the subsequent disclosure of the content of the letters the district attorney sent to the PBPP. In fact, McAleese himself proved that the content of the correspondence was not a "vital fact" underlying his claims as he

---

[12]McAleese apparently believes that because he would not admit that he committed a sex offense as he had not committed such an offense, and inasmuch as he had to make that admission to complete the program, he could not complete it. We note with respect to the sex offender treatment program that, even though McAleese was not convicted of a sex offense, the record indicates that he has exhibited dangerous behavior towards females, and the underlying murder involved stab wounds to the victim's nipples and right labia. <u>See</u> <u>McAleese v. Mazurkiewicz</u>, 1 F.3d 159, 163 (3d Cir. 1993).

13

filed his habeas corpus petition without possession of those documents. Obviously, he could have filed his petition earlier had he chosen to do so. Furthermore, even before the PBPP initially denied him parole he was aware of the correspondence opposing his parole application and surely knew that he had not been convicted of or, indeed, so far as we are aware, even charged with a sex offense.

Clearly, McAleese has confused the facts that make up his claims with evidence that might support his claims. See Johnson v. McBride, 381 F.3d 587, 589 (7th Cir. 2004) ("A desire to see more information in the hope that something will turn up differs from 'the factual predicate of [a] claim or claims' for purposes of § 2244(d)(1)(D)."). The record reveals that McAleese had all of the "vital facts" at the time of the parole denial in 1995. Indeed, the record includes his requests for relief to the DOC and the PBPP soon after his parole denial. The requests contain all of the critical information and claims which appeared in his habeas corpus petition filed several years later: he was denied parole and ordered to comply with a sex offender treatment program; there was no factual basis for the denial of parole; the PBPP denied him parole in retaliation for his failure to cooperate with the district attorney in the Santiago proceedings; and the correspondence from the district attorney to the PBPP was being withheld from him illegally. Moreover, we reiterate that he knew even before the PBPP denied his parole application that the district attorney had submitted correspondence opposing his application. Unfortunately for McAleese, he chose to pursue his grievances for several years with the DOC and the PBPP rather than to file a timely habeas corpus petition in the district court.

We point out that in the Eastern District of Pennsylvania, the applicable procedural directions for a habeas corpus petition require that a petitioner "[s]tate concisely every ground on which you claim that you are being held unlawfully," and "[s]ummarize briefly the facts supporting each ground." App. at 21. Accordingly, McAleese did not have to present all of the evidence to support his claims. The petition is only the first step in a habeas corpus proceeding, following which, if

14

appropriate, there can be discovery leading to the uncovering of evidence. Under McAleese's theory, a court would delay the triggering of the running of the limitations period until all evidence in support of a petition is secured, a result which surely would run contrary to the intent of Congress through its enactment of the AEDPA to promote the finality of convictions. See Duncan v. Walker, 533 U.S. 167, 179, 121 S.Ct. 2120, 2128 (2001); United States v. Bendolph, 409 F.3d 155, 162 (3d Cir. 2005), cert. denied, 126 S.Ct. 1908 (2006).

We are not the only court of appeals to have considered a situation like the one here. In Flanagan v. Johnson, 154 F.3d 196, 197 (5th Cir. 1998), the petitioner was convicted in 1989 of aggravated possession of more than 400 grams of cocaine. His conviction became final in 1991 when its direct review was over. Id. In 1997, he filed a section 2254 petition asserting that his conviction was obtained without due process of law because he was called to testify on his own behalf without being informed of his right not to testify. Id. The petitioner argued that his petition was timely under section 2244(d)(1)(D) because he did not discover the "factual predicate" of his claim until October 1996 when his habeas corpus counsel located his trial counsel in a rehabilitation facility in rural Texas. Id. at 198. At that time, the petitioner's trial counsel executed an affidavit stating that he did not remember whether he and the petitioner discussed his right not to testify. Id. The petitioner contended that "the lawyer's affidavit form[ed] part of the factual predicate of his suit because, by not conclusively negating the proposition, the affidavit implicitly supports [his] claim that he was not informed of his right not to testify." Id. at 198-99.

The Court of Appeals of the Fifth Circuit rejected the petitioner's timeliness argument, explaining that

> [the petitioner] is confusing his
> knowledge of the factual predicate of
> his claim with the time permitted for
> gathering evidence in support of that
> claim. Trial counsel's affidavit
> neither changes the character of [the

15

petitioner's] pleaded due process claim nor provides any new ground for [his] federal habeas petition. Section 2244(d)(1)(D) does not convey a statutory right to an extended delay, in this case more than seven years, while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim.

Id. at 199.  The court pointed out that the petitioner did not even file the "purportedly crucial affidavit" with his original habeas petition.  Id.  Rather, he submitted only his own affidavit with the original habeas corpus petition and he did not submit his trial counsel's affidavit until he later filed a supplementary pleading. Id.

Inasmuch as the material facts here are indistinguishable from those in Flanagan, not surprisingly we reach a conclusion parallel with the conclusion that the court reached in that case. As was true of the trial attorney's affidavit in Flanagan with respect to the petitioner's claims there, the correspondence from the district attorney was not the "factual predicate" of McAleese's claims as the correspondence did not "change[ ] the character" of the claims, nor did it provide new grounds for the petition.  Rather, the correspondence merely was evidence that McAleese believed supported his claims.  Moreover, like the petitioner in Flanagan,  McAleese filed his habeas corpus petition without obtaining the "purportedly crucial" materials.  In sum, McAleese's quest to uncover evidence to support his claims simply did not entitle him to a potentially indefinite delay in filing his habeas corpus petition.

We address one more case relating to this point. McAleese relies on Johnson v. United States, 340 F.3d 1219, 1223 (11th Cir. 2003), for the proposition that legal events, such as parole denial, are not "facts" as used in the habeas corpus limitations provisions because "[a] factual proposition is typically something capable in principle of falsification (or

16

possibly even verification) by some empirical inquiry, while a legal proposition is identified by consulting some authoritative legal source."[13]  Appellant's br. at. 18-19 (quoting Johnson, 340 F.3d at 1223).  McAleese, however, neglects to mention that on further appeal the Supreme Court unanimously disagreed with Johnson on this point, holding that a state-court vacatur of a state sentence underlying the federal sentence, and not the facts on which the challenge to the validity of the state convictions was based, constituted the "facts" that triggered the one-year period under section 2255.  See Johnson v. United States, 544 U.S. 295, 125 S.Ct. 1571 (2005).[14]

This is what happened in Johnson.  After the petitioner pleaded guilty in the district court to distribution of cocaine, the court sentenced him as a career offender on the basis of two prior state convictions for cocaine distribution.  Id. at 298, 125 S.Ct. at 1575.  Four years later, a state court vacated one of the predicate convictions because the petitioner had not knowingly waived his right to counsel in that case.  Id. at 300-01, 125 S.Ct. at 1576.  Three months after the state court vacated the conviction, the petitioner filed a section 2255 habeas petition seeking an order vacating the enhanced federal sentence.  Id. at

---

[13]Johnson applied 28 U.S.C. § 2255, which imposes a one-year statute of limitations on motions by prisoners seeking to modify their federal sentences.  Like section 2244, section 2255 states that the one-year period runs from the latest of four alternative dates, the last of which is "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2255.  We see no reason to distinguish between "facts supporting the claim" in section 2255 and "factual predicate" in section 2244.  See Burns, 134 F.3d at 111-12 (holding that one-year limitations periods under sections 2244 and 2255 are "virtually identical").

[14]We are surprised and disappointed that McAleese's attorney in her brief did not mention the Supreme Court opinion in Johnson inasmuch as the Court filed that opinion on April 4, 2005, and she filed her brief on July 10, 2006.  It seems to us that she should have been aware of the Supreme Court's opinion and should have brought it to our attention.

17

301, 125 S.Ct. at 1576. He claimed that his motion was timely under section 2255 because the order vacating the state judgment constituted the fact supporting his claim, thus triggering a renewed limitations period. Id. A divided court of appeals over a dissent rejected his argument, holding that the state-court order vacating the prior conviction was not a "fact," but, instead, was "a legally operative order [that was] a mandate of law or a consequence of applying law, and therefore [was] distinct from a matter of 'fact' as Congress used the term in § 2255." Id. at 304-05, 125 S.Ct. at 1578 (summarizing holding of court of appeals).

The Supreme Court, however, disagreed with the court of appeals on this point, holding that "notice of the order vacating the predicate conviction is the event that starts the one year running" as the state-court order of vacatur was a necessary predicate for the section 2255 claim. Id. at 308, 125 S.Ct. at 1580. Therefore, the Court unanimously rejected the holding of the court of appeals that an order vacating a conviction is not a "fact" as such an order is "subject to proof or disproof like any other factual issue." Id. at 306-07, 125 S.Ct. at 1579-80; see id. (majority holding that vacatur is the fact that begins the limitations period), and 544 U.S. at 312, 125 S.Ct. at 1582 (dissent agreeing with majority on this point).[15] Thus, contrary to McAleese's argument, Johnson actually supports a holding that a legal event, in this case, a parole denial and in Johnson, a state-court order, can, and in this case does, constitute the "factual predicate" of a habeas corpus claim under section 2254.

_____

[15]The Court was split in its ultimate holding in that the majority concluded that a petitioner must exert due diligence in seeking the state-court order of vacatur and the petitioner had not done so. Consequently, the Court upheld the judgment of the court of appeals affirming the judgment of the district court denying the petition as untimely. Johnson, 544 U.S. at 311, 125 S.Ct. at 1582. The dissent, while agreeing with the majority that the state-court order of vacatur was the triggering event for limitations purposes under the AEDPA, believed that section 2255 did not require the petitioner to show that he used due diligence in seeking the state-court vacatur. Id. at 312, 125 S.Ct at 1582. Thus, the dissenting justices would have reversed.

B.    Submission of new materials

McAleese next argues that even if the denial of the
parole and not the disclosure of the documents constituted the
"factual predicate" of his claims, the limitations period should
not have begun to run until the PBPP last denied him parole in
2001 and not when it first denied him parole in 1995.  McAleese
predicates this contention on the fact that the PBPP received
additional correspondence from the district attorney after the
1995 denial on which, according to him, the PBPP relied in
denying him parole in 2000 and 2001.  The additional documents
to which McAleese points were attached to the letter dated
August 16, 2000, from the district attorney to the PBPP,
disclosed with respondents' answer to McAleese's restated
Eastern District petition to which we have referred: (1) an
anonymous letter postmarked July 14, 2000, to the president of
the Fraternal Order of Police recommending favorable treatment
towards him with respect to the Santiago retrial,[16] and (2) a
federal civil rights complaint dated January 12, 1999, that he
filed against the PBPP and the district attorney making
allegations similar to those he asserted in the habeas corpus
petition before us now.

We reject this argument.  McAleese filed his habeas
corpus petition on March 2, 1998.  Clearly, the "factual
predicate" of his claims asserted in 1998 cannot be the
subsequent parole denials in 2000 and 2001 regardless of when
the documents on which he relies were sent to the PBPP.  This is
chronologically impossible.

To circumvent this impossibility, McAleese contends
that the repeated denials of parole constitute a "continuing
violation" of his rights, and that we, accordingly, should regard
the most recent parole denial in 2001 as the event that triggered

---

[16]The district attorney contends that McAleese actually wrote this
anonymous letter, though it was supposedly from a police officer.

19

the running of the statute of limitations.[17] This theory is misplaced. First, he does not point to any case in which we have applied the continuing violations theory in the context of tolling the limitations period in habeas corpus cases in a way that would extend the habeas corpus petition timeliness requirements in contravention of Congress's emphasis on the finality of convictions in enacting the AEDPA.

Second, even if we were to apply a continuing violations theory in the context of habeas corpus petitions, the successive denials of McAleese's parole applications would not constitute "continuing violations." Under the continuing violations theory, a plaintiff may pursue a claim for conduct that standing alone would have been untimely as it occurred before the start of the applicable statute of limitations filing period as measured back from the time of the filing of the action. The application of the continuing violations theory may be appropriate in cases in which a plaintiff can demonstrate that the defendant's allegedly wrongful conduct was part of a practice or pattern of conduct in which he engaged both without and within the limitations period. See, e.g., West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995). "To establish that a claim falls

[17]As we already have noted, the PBPP denied McAleese parole for the third time on October 30, 2001, and on June 20, 2002, he filed his restated habeas corpus petition in the Eastern District pursuant to that court's directions. This time sequence could have opened the possibility that McAleese's petition was timely if it challenged the October 30, 2001 parole denial standing alone even if it also challenged the original 1995 parole denial. We, however, reject this possibility because McAleese in his June 20, 2002 submission did not state that he was making a stand-alone challenge to the October 30, 2001 parole denial. Moreover, respondents in their brief on this appeal indicate that "[t]he decision denying parole which the petition challenges is dated September 2, 1995 . . . ." Appellees' br. at 6. In his reply brief McAleese does not say that that statement was incorrect, though he does contend "that the content of the district attorney's letters" as well as the additional correspondence to which we referred above "were used to deny [him] parole in 2000 and 2001, and thus [his] claim was timely filed." Appellant's reply br. at 8. But, of course, that contention was consistent with his continuing violation argument and, indeed, was its essence.

20

within the continuing violations theory, a plaintiff must do two things": (1) "he must demonstrate that at least one act occurred within the filing period[,]" and (2) he must establish that the conduct is "more than the occurrence of isolated or sporadic acts," i.e., the conduct must be "a persistent, on-going pattern." Id. at 754-55 (internal quotation marks omitted).

In this case, McAleese's petition was subject to a one-year filing period under the AEDPA measured from April 24, 1996, until April 23, 1997.[18]  Consequently, inasmuch as McAleese filed his habeas corpus petition on March 2, 1998, the 2000 and 2001 parole denials occurred after the close of the limitations period with respect to the time for a challenge to the original parole denial on September 2, 1995, and they could not save any claim that he might have had with respect to that denial. The actual effect of accepting McAleese's argument would be to revive his barred claim challenging the 1995 parole denial, something we will not do.  In this regard, we reiterate that McAleese has not instituted separate habeas corpus proceedings with respect to the denial of his parole applications in 2000 and 2001 and thus this case does not involve any act within the filing period for, as we have explained, the factual predicate of McAleese's claims was the 1995 determination by the PBPP to deny him parole allegedly to coerce his testimony in the Santiago case and to require him to participate in the sex offender program.[19]

We also point out that it is clear that the three parole denials over the six-year period from 1995 to 2001 are "isolated or sporadic acts" and not "a persistent on-going pattern." Therefore, in accord with our recent discussion in O'Connor v.

----

[18]We are not concerned with any limitations period that predated the enactment of the AEDPA even though the parole denial on September 2, 1995, was before its enactment.

[19]We express no opinion as to whether the restrictions on filing second or successive habeas corpus claims in 28 U.S.C. § 2244(b) might have been applicable if McAleese filed or sought permission from us to file a petition challenging the 2000 and 2001 parole denials.

City of Newark, 440 F.3d 125, 127 (3d Cir. 2006), and in light of the Supreme Court's holding in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061 (2002), challenges to these "discrete acts" of parole denial were required to have been made within the applicable limitations periods with respect to each act. Accordingly, because the challenge to the September 2, 1995 parole denial was not raised within the applicable period, it was untimely. A conclusion that each denial of parole was a discrete act is unavoidable in that Morgan indicated that "termination, failure to promote, denial of transfer, or refusal to hire" are discrete acts. Id. at 114, 122 S.Ct. at 2073. Denial of parole and a direction that petitioner participate in a sex offender program are no less discrete.

C.    Equitable tolling

McAleese's last argument is that even if we find that he failed to file his petition within the AEDPA's limitation period, we should equitably toll the running of the statute of limitations because he "was actively misled as to even the existence of the various materials sent to the PBPP regarding his parole, and certainly was denied access to their contents." Appellant's br. at 23. McAleese's argument is unpersuasive. Equitable tolling is available "only when the principle of equity would make the rigid application of a limitation period unfair." Merritt v. Blaine, 326 F.3d 157, 168 (3d Cir. 2003) (internal quotation marks omitted). A petitioner seeking equitable tolling bears the burden to show that he diligently pursued his rights and that some "extraordinary circumstances stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 1814 (2005).

Here, there were no extraordinary circumstances, or, indeed, any circumstances at all, preventing McAleese from filing a timely petition. Obviously, McAleese cannot persuasively argue that the withholding of the materials sent to the PBPP prevented him from doing so as he, in fact, did file his petition without first seeing that documentation. But instead of timely filing his petition following the 1995 parole denial, he engaged in a multi-year campaign to secure evidence that might support his claims. While we exercise some level of leniency

22

with respect to pro se petitioners as McAleese was both when he first began contesting the parole denial at the administrative level and at the time he filed his initial habeas corpus petition, mere neglect, even if characterized as excusable, does not justify equitable tolling in any circumstances. See Miller v. N.J. Dep't of Corr., 145 F.3d 616, 618 (3d Cir. 1998).

## V. CONCLUSION

For the foregoing reasons, we will affirm the order entered on October 22, 2003, by the district court denying McAleese's petition for a writ of habeas corpus.