

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-5-2007

# Hunt v. Piazza

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2381

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Hunt v. Piazza" (2007). *2007 Decisions.* Paper 269.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/269

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-2381

———

GERALD R. HUNT,

*Appellant*,

v.

JOSEPH PIAZZA, Supt., SCI-C.T.;
COURT OF COMMON PLEAS OF SUSQUEHANNA COUNTY;
ATTORNEY GENERAL OF PENNSYLVANIA,

*Appellees*.

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 05-cv-2116)
District Judge: Honorable James M. Munley

———

Argued October 25, 2007
Before: SLOVITER, CHAGARES and HARDIMAN, *Circuit Judges*.

(Filed: November 5, 2007 )

Raymond J. Rigat (Argued)
23 East Main Street
Clinton, CT 06413
*Attorney for Appellant*

Jason J. Legg (Argued)
Office of District Attorney
P. O. Box 218

Montrose, PA 18801
        *Attorney for Appellees*

———

OPINION OF THE COURT

———

HARDIMAN, *Circuit Judge.*

Appellant Gerald R. Hunt appeals the denial of his petition for writ of habeas

corpus (Petition) pursuant to the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA), 28 U.S.C. § 2241 *et seq.* Because we write for the parties, we recite only the

facts necessary to our decision.

**I.**

On January 13, 1999, Hunt was convicted of murder and other related charges in a

bench trial in the Court of Common Pleas of Susquehanna County, Pennsylvania and was

sentenced to 20 to 40 years of imprisonment on January 21, 1999. Hunt filed a counseled

post-sentence motion, which was denied on May 10, 1999. Although Hunt wanted to

appeal, trial counsel declined to represent him and withdrew on June 3, 1999. That same

day, Hunt sent a *pro se* letter to the clerk of court requesting an extension of time to find

an attorney and to obtain the trial transcripts. Hunt also asked that the court appoint him a

lawyer if he could not find one by June 9, 1999. Meanwhile, David G. Gnall, Esq., the

Hunt family's attorney, was looking for someone else to represent Hunt during post-

conviction proceedings. Gnall found Robert McCormack, Esq., who entered his

2

appearance on Hunt's behalf on June 4, 1999.  Instead of filing a direct appeal, however, McCormack permitted the filing deadline to pass and then told Hunt that he would seek reinstatement of his direct appeal rights by filing a petition under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. § 9541 *et seq*.  For this service, Hunt's family paid $17,000.00 to Gnall, who was to pay McCormack for representing Hunt in post-conviction proceedings.

On June 30, 1999, McCormack confirmed his representation of Hunt and wrote:

> I am currently reviewing your case file and preparing a Post Conviction Relief Act Petition, on your behalf.  One of the allegations I will make in said Petition is that your previous Attorneys failed to properly protect your Appellate Rights.  We will be requesting, among other relief that a Nunc Pro Tunc Direct Appeal be granted.  By doing so I will protect your Appellate Rights at this time.

McCormack also represented that he was "in the process of drawing up the aforementioned PCRA Petition," which he promised to send to Hunt before filing it.

Six months passed in which McCormack apparently did nothing on Hunt's case. Hunt wrote to the Susquehanna County Prothonotary on January 16, 2000 and eight days later the Clerk of Court informed Hunt that, insofar as McCormack was his attorney of record and had not withdrawn, "all actions on your behalf must be filed by your attorney of record."  On February 3 and February 11, 2000, McCormack wrote Hunt to tell him he was "reviewing" his file and working to obtain copies of his transcripts.  On March 10, 2000, McCormack wrote to Hunt's brother, requesting a check for $762.00 for  the cost of the transcripts of Hunt's four-day jury trial.

3

It is unclear what else, if anything, McCormack did by June 9, 2000, which was the deadline for filing a PCRA petition on Hunt's behalf. McCormack next wrote to Hunt on August 3, 2000 stating:

> I am in the process of obtaining a reinstatement of your appellate rights with regards to the above referenced matter. Once the appeal [*sic*] is filed, I will begin to proceed to prepare an appeal of your conviction to the Superior Court of Pennsylvania. Any decision with regards to your case at that point would be left up to the Superior Court following a submission of Briefs and arguments on your behalf.

In an undated letter Hunt received sometime thereafter, McCormack continued to assure Hunt that he was actively working on his case:

> I am in the course of drafting this P.C.R.A. Petition in order that it might be filed with the Court. As I am sure you are aware, there was a large amount of testimony in your trial and these transcripts had to be reviewed in order that I might properly prepare this Petition. This has taken some time but I have completed my review of the transcripts and I am in the process of drafting the P.C.R.A. Petition.

McCormack reassured Hunt that once the petition was finished, it would be filed.

Two more years passed and McCormack filed nothing on Hunt's behalf. On October 1, 2003, Hunt began to attempt to represent himself, filing a motion to vacate fines and costs in the Court of Common Pleas. That motion was denied on October 14, 2003, and Hunt appealed that denial *pro se* to the Superior Court.

By November 9, 2003, Hunt wrote to McCormack to dissolve their relationship, explaining:

> Gnall told me that he had entered into some type of financial agreement with you: paying you a sum of money for your services in

4

preparing an appeal in the above captioned criminal case. However, as you know, I have never heard from you, nor have I ever received any documents that you might have prepared. It has been more than four (4) years since I was sentenced and I do not even have proof of an active appeal.

I do know one thing: I paid more than seventeen-thousand dollars ($17,000.00) for representation and [Gnall] said he gave some of that money to you, for services that were never rendered.

Hunt then stated: "[y]our attempts and ignoring me and my appeals have ended." He then gave McCormack three weeks to turn over his file, including any work McCormack had done on the case, and issued an ultimatum: if McCormack did not relinquish his case file, Hunt threatened to report him to the Disciplinary Board of the Pennsylvania Supreme Court.

McCormack evidently did not respond to Hunt's November 9, 2003 letter. Accordingly, during the pendency of Hunt's *pro se* appeal, on February 21, 2004, Hunt filed a formal complaint against McCormack and Gnall. That same day, Hunt petitioned the court to remove his counsel, order the return of his files, and appoint a new attorney. Hunt stated: "Despite numerous letters from both Attorneys Gnall and McCormack [ ] indicating otherwise, the court docket in this matter will show that nothing was ever filed by either of them — not even a notice of appeal." The court ordered the attorneys to show cause why they should not be discharged on March 2, 2004; when they failed to do so, the court granted this request.[1]

---

[1] Two weeks earlier, on February 18, 2004, the Pennsylvania Supreme Court suspended McCormack from the practice of law for three years for mishandling eleven cases. *See Office of Disciplinary Counsel v. McCormack*, No. 59 DB 2002, No. 885

5

In May 2004, the Pennsylvania Superior Court affirmed the Court of Common

Pleas' denial of Hunt's motion to vacate fines and costs. The Superior Court explained:

> The [Court of Common Pleas] was without jurisdiction. The [PCRA]
> makes it abundantly clear that the [PCRA] provides the sole means of
> obtaining collateral relief from a judgment of sentence. [Hunt], who,
> himself, characterized his initiative as an effort to review the discretionary
> aspect of his sentence, is bound by time limitations for seeking [PCRA
> relief]. The time for filing a petition is one year from the date the judgment
> became final. Hunt's direct appeal rights ended with the denial of his
> motion for post-sentence relief by order dated May 10, 1999. Thus, his
> [PCRA] rights have long since passed.

Hunt did not appeal the Superior Court's ruling. Instead, on July 14, 2004, he filed a *pro*

*se* motion for an extension of time to file his PCRA petition in the Court of Common

Pleas. One week later, that court denied the motion and reminded Hunt that there was a

one-year limitations period for the filing of a PCRA petition, and listed the applicable

exceptions to that period.

On August 10, 2004, however, Hunt filed his PCRA petition without alleging any

exception to that period. Accordingly, the Court of Common Pleas issued an order stating

that it lacked jurisdiction over Hunt's untimely petition and observing that Hunt had "not

provided any information, nor can the court find any information, in [his] pleadings that

---

Disciplinary Docket No. 3 (Pa. 2004). Although Hunt's case was not among them, some
of the cases for which McCormack was suspended involved misconduct remarkably
similar to the facts of this case. In the Dodge Matter, for instance, the court removed
McCormack as counsel after he failed to timely file an appeal on behalf of a criminal
defendant. *See id.* at 10-11. In the Collins Matter, McCormack was appointed to pursue
an appeal but merely answered letters and obtained the file without perfecting the appeal.
*Id.* at 11-13.

would indicate the time limitations should be tolled." Nevertheless, the court did not dismiss Hunt's petition and appointed counsel to review Hunt's file.

In September 2004, Hunt filed a *pro se* response to the court's order, but again he did not allege that he could avail himself of any of the exceptions which would permit tolling. Later that month, Robert Hollister, Esq. — Hunt's court-appointed counsel — filed a "no merit" letter in which Hollister analyzed each of the PCRA's exceptions to the one-year limitations period and concluded that there was no basis upon which to justify statutory tolling. Accordingly, Hollister was granted leave to withdraw as counsel, and the Court of Common Pleas dismissed Hunt's petition as untimely in October 2004.

Proceeding *pro se* again, Hunt appealed the Court of Common Pleas' dismissal of his PCRA petition, complaining that McCormack had rendered ineffective assistance in failing to file a direct appeal. On June 9, 2005, the Pennsylvania Superior Court affirmed the denial of Hunt's PCRA petition, finding it untimely. The Pennsylvania Supreme Court denied allocatur on October 11, 2005.

Hunt filed the instant Petition on October 18, 2005. After full briefing, the District Court dismissed the Petition as untimely on March 27, 2006 without considering the applicability of equitable tolling, and denied a certificate of appealability (COA) on the same date. On October 23, 2006, we granted a COA on the question whether Hunt's untimely habeas petition was subject to equitable tolling in light of his contention that he was denied his constitutional right to a direct appeal.

7

## II.

The district court had jurisdiction under 28 U.S.C. § 2254. Upon our issuance of a COA, we obtained jurisdiction over this appeal under 28 U.S.C. §§ 1291 and 2253. Our review of the order denying the habeas corpus petition in this case as time-barred is plenary. *See McAleese v. Brennan,* 483 F.3d 206, 212 (3d Cir. 2007).

## III.

The issues of statutory and equitable tolling were raised in the District Court. The District Court found that statutory tolling was unwarranted under 28 U.S.C. § 2244(d)(2), but did not address the issue of equitable tolling. We have held that the AEDPA statute of limitations is generally subject to equitable tolling, when equity so requires. *See Miller v. New Jersey State Dep't of Corr.,* 145 F.3d 616, 618 (3d Cir. 1998). Citing *Miller*, Hunt argues that McCormack's continued false representations that he was filing a PCRA petition — along with the state court clerk's refusal to act on Hunt's *pro se* pleadings as long as he was represented by counsel — amount to extraordinary circumstances which would justify equitable tolling of the AEDPA statute of limitations. Additionally, Hunt insists that his conduct after learning of McCormack's deceptions amounted to reasonable diligence. Because the District Court should have decided the equitable tolling issue in the first instance, and because additional development of the factual record could be helpful in resolving this issue, we will remand the case for factfinding on this issue.

8

On remand, the District Court should consider Hunt's equitable tolling claim. As the United States Supreme Court has explained, a litigant seeking equitable tolling bears the burden of establishing two things: (1) that some "extraordinary circumstance" stood in the way of his pursuing his rights, and (2) that he has pursued those rights "diligently." *See Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005); *see also LaCava v. Kyler,* 398 F.3d 271, 276 (3d Cir. 2005). An evidentiary hearing may be necessary to permit a decision on the tolling issue, particularly on the question of Hunt's diligence.

Though we take no position on the merits, we note three principles to guide the District Court's analysis on remand. First, we observe that although attorney mistakes or errors generally do not rise to the level of extraordinary circumstances, *see Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir. 2001); *see also Schlueter v. Varner,* 384 F.3d 69, 76 (3d Cir. 2004), there are "narrow circumstances in which the misbehavior of an attorney may merit such equitable relief." *Seitzinger v. Reading Hosp. & Med. Cent.,* 165 F.3d 236, 239 (3d Cir. 1999) (citation omitted); *see also Nara v. Frank,* 264 F.3d 310, 320 (3d Cir. 2001). Second, we note that "the question whether a habeas petitioner has exercised due diligence is context-specific. The fact that we require a petitioner in one situation to undertake certain actions does not necessitate that we impose the same burden on all petitioners," *see Wilson v. Beard,* 426 F.3d 653, 661 (3d Cir. 2005), and "[t]his obligation does not pertain solely to the filing of the federal habeas petition, rather it is an obligation

9

that exists during the period appellant is exhausting state court remedies as well." *LaCava*, 398 F.3d at 277. Third, we emphasize that under AEDPA, any findings of fact made by the state courts are presumed to be correct, and Hunt bears the burden of rebutting the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *see also Affinito v. Hendricks*, 366 F.3d 252, 256 (3d Cir. 2004).

Finally, we observe that Hunt belatedly argued for the first time on appeal that his June 3, 1999 *pro se* letter to the clerk of the Court of Common Pleas — in which he expressed his "intent" to take an appeal and asked for more time in which to do so — constituted a notice of appeal under Pennsylvania law that remains pending in the state courts. We did not reach this question and declined to expand the scope of the COA to include it, in part because Hunt's counsel conceded at oral argument that the claim had not been raised in state courts. If Hunt raises this claim on remand, the District Court should ascertain whether it is exhausted and, if not, whether it is procedurally defaulted. *See Villot v. Varner*, 373 F.3d 327, 337-38 (3d Cir. 2004).

## IV.

For all of the foregoing reasons, we will vacate the judgment below and remand the case to the District Court for further proceedings consistent with this opinion.